WILLIAM E. GOULD *v.* NELSON S. STEVENS.

*Promissory Note. Consideration. Patent Right.*

The plaintiff purchased the note in question, before due, of a stranger, at a discount of $50, the note being $300. The signer of the note was known to the plaintiff to be responsible, but the holder refused to guarantee its payment. The plaintiff did not know or have any communication with the payee of the note. There was in fact a defense to the note as against the payee, on the ground of a total failure of consideration, the note having been given for a worthless patent right, but the plaintiff was ignorant of this fact. The defendant claimed that it was for the jury to say whether these circumstances were such as to put the plaintiff, as a prudent man, on inquiry as to the consideration and validity of the note, and so requested the court to charge, which request the court refused, and directed a verdict for the plaintiff. *Held* that in this there was error.

*Held* that under all the circumstances the case should have been submitted to the jury to determine upon the evidence whether the plaintiff could not have ascertained on reasonable inquiry that the note was without consideration. .

ACTION, assumpsit. Plea, the general issue. Trial by jury, March term, 1870, STEELE, J., presiding. On trial the plaintiff proved in evidence a note, of which the following is a copy:

Gould v. Stevens.

" $300—Montpelier, Vermont, Oct. 28, 1867.  One year after date I promise to pay Stephen Van Dresar, or bearer, three hundred dollars, payable at the first National Bank of Montpelier, Vt., for value received with interest.            N. S. STEVENS."

[U. S. Int. Rev. Stamps, 15 cts.]

[ENDORSED.]

." The property of J. Benton, Nov. 12, 1867, H. Owens, Agent."

The plaintiff also proved presentment and non-payment, and then rested.

The defendant then proved that while he was attending the legislature as representative of Maidstone, he bought the right of Essex county, in a patent for a horse pitchfork, and gave the said note for it ; that he had seen but few actual trials of the fork, and those were satisfactory, but on returning home after the session and experimenting himself, he then discovered that the machine was, for practical work, substantially worthless ; that the recommendations of the vendor thus proved false and deceitful. There was no evidence that before these experiments by himself he was dissatisfied with his bargain, or knew of any defense to the note, but the proof tended to show that a good defense existed, in fact, by reason of the worthlessness of the invention.  After this proof the defendant rested.

It was agreed that the real plaintiff 'was Jacob Benton.  After the defendant rested, said Benton was called as a witness, and testified to the following facts :  That on the 12th day of November, 1867, said " H. Owens, agent," called on him at his place in Lancaster, N. H., which is some ten miles from Maidstone, and that said Owens was a stranger to him ; that Owens told him he had a note of $300 against defendant, and understanding that he, Benton, sometimes discounted paper, he had called to sell it to him.   Benton then examined the note, and testified he knew of defendant's circumstances, and knew him to be good at that time for such a sum as $300, and asked Owens what discount he would make on the note.   He replied, $25.   Benton answered, " That is a reasonable discount, providing you guarantee payment.   Stevens is good now, but how he will be in a year I can't tell." Owens replied that he did not live in this vicinity, and preferred to close the matter up, and have no further responsibility about it.

Benton then said, " If I take the whole risk of Stevens proving unable to pay the note, I shall charge twice as much discount," and testified that he usually made that difference when he bought paper. Owens accepted the offer, and Benton paid him $250 cash for the note. Benton testified that, as he was a lawyer, he always, when he bought a note, required the vendor to write on it an endorsement, that it was his (Benton's) property, so as to distinguish it from notes left with him for collection, and it was so done in this case ; that in purchasing this note he had no dream or suspicion there was any defense to it, unless it might be said that Stevens's inability to pay it, if his circumstances should change, might be called a defense ; that he made no inquiry as to the consideration, but understood Owens to say it was taken in a trade. It also appeared that just previous to calling on Benton, Owens had called on defendant's father, and tried to sell him the note. The defendant was at this time, and at the time of the sale to Benton, still at Montpelier, attending the legislature. It also appeared that the holder of the note had tried to sell it to the defendant himself at 20 per cent. discount, but defendant declined the offer ; but there was no evidence that defendant, previous to or on November 12, 1867, had repudiated the note, or had discovered that he had any defense to the note, other than the fact that he had declined to buy the note at 20 per cent. discount. The defendant's experiments with the machine were after that. It also appeared that Benton never knew, personally or by reputation, Van Dresar, the payee of the note, and never had any communication with him. No facts or testimony appeared tending to explain the circumstances under which Benton purchased the note, except such as are above detailed.

The defendant claimed that it was for the jury to say whether these circumstances were such as to put Benton, as a prudent man, on inquiry as to the consideration and validity of the note, and asked to go to the jury on this question.

The court overruled this claim and request, and refused to submit the question whether the plaintiff in interest was entitled to stand in the position of a *bona fide* holder for value, without notice, to the jury, and ruled that upon the evidence the said plaintiff

did stand in this position, to which the defendant excepted. The court directed a verdict for the plaintiff.

*Burns & Heywood*, for the defendant.

*J. B. Benton* and *George N. Dale*, for the plaintiff, cited Greenl. on Ev., Vol. 2, § 172 ; *Bailey* v. *Bidwell*, 13 M. & W., 73 ; Parsons on Bills and Notes, Vol. 1, 186–187, and cases there cited ; *Ross* v. *Bedell*, 5 Duer, 467 ; *Benior* v. *Paquin*, 40 Vt., 205 ; *Clark* v. *Pease*, 41 N. H., 414, and cases there cited ; *Perkins* v. *Prout*, 47 N. H., 389 ; *Garland* v. *Lane*, 46 N. H., 245 ; *Britton* v. *Bishop et al.*, 11 Vt., 70 ; 14 Penn. State R., 14.

The opinion of the court was delivered by

WILSON, J. After stating the substance of the bill of exceptions, which is given in full above, the opinion continued as follows : The defendant claimed that it was for the jury to say whether the circumstances were such as to put said Benton, as a prudent man, on inquiry as to the consideration and validity of the note, and asked to go to the jury on this question. But the county court decided that upon the evidence the plaintiff was entitled to stand in the position of a *bona fide* holder for value, without notice, and directed a verdict for the plaintiff. In this, we think, the court below erred. The circumstances were such as to excite suspicion, and lead a prudent man to suppose there might be something relating to the note that rendered it invalid. This was and is the tendency of the circumstances disclosed by the testimony of Benton himself. The maker of the note was apparently good, and of this Benton had knowledge. A stranger to Benton called on him and offered to make, and did make, a large discount on the note, in the sale of it, and refused to guaranty its payment. Benton did not know or have any communication with the payee of the note. These facts were sufficient to put Benton on inquiry, and it cannot be assumed that he would not have learned anything about the consideration of the note. If he had inquired of the maker of the note, he would, most likely, have learned that the note was given for a patent right ;

that the payee represented it valuable ; that he had not tested it, and whether it was a valid note or not would depend upon future experiments with the fork.   We think the case should have been submitted to the jury to determine, upon the evidence, whether. Benton, on reasonable inquiry, could have ascertained that the note was without consideration.

The judgment of the county court is reversed, and the cause remanded.