## CHARLES C. BROMLEY v. ELI J. HAWLEY.

### Bills and Notes.

1. The surrender of an overdue note enforceable against one of two indorsers though not against the other or the principal; is a valuable consideration for a new note signed and indorsed by the same parties with an additional indorser.

2. The plaintiff was the owner of $4,000 note which he purchased of one of the directors of a marble company which issued it, and a little more than two months after it was due he was induced by the same director to exchange the old note for a new one signed by the same party as the old one and with the same indorsers, with this defendant as an additional indorser; Held, under the circumstances of the case, that the facts that the note was overdue; that it amounted to $4,000; that it had different numbers on it,—one placed there by the maker and the other by the bank,—were not sufficient to put the plaintiff upon inquiry; it appearing that he took the note in good faith; and that the party with whom he negotiated was a man of extensive business, and his character and financial standing high.

3. The rights of an indorser of a note are not such that a purchaser is bound to inquire, unless the circumstances are such as ought to excite the suspicion of a prudent and careful man, as to its validity as between the parties to it.

ASSUMPSIT on a promissory note given for $4,000 by the Dorset Marble Company, dated July 21, 1883, payable in five months after date at the National Bank of Rutland, Vermont, to the order of J. B. Hollister, treasurer of said company, and indorsed by J. B. Hollister, treasurer, E. J. Hawley, the defendant, and J. B. Page, and numbered 445 by said company. Plea, general issue and notice. Trial by court, September Term, 1886, Rutland County, VEAZEY, J., presiding. Judgment for the plaintiff. Affirmed.

The following facts were found : One Borden of Philadelphia was the owner of the note, and sued it in the name of the plaintiff for convenience. The defendant was an accomodation indorser of the note and of other notes for the marble company. This note was issued by said company and indorsed by defendant and delivered to said Page by the company with right to use it only to raise money or to pay other notes indorsed by the defendant. Page had no authority to use the note for his private purposes, or for any purpose except as specified above. He was one of the directors of the company, and accustomed to negotiate some of its notes. The defendant was president of the company ; and neither he nor the company received any money on this note, nor was it used to pay any paper on which the defendant was indorser, or liable to pay ; nor had defendant any knowledge of Borden, or of any dealings by Page with him. Page at the date of this note was president of the National Bank of Rutland. Prior to January 31, 1883, said bank held and owned said company's note, No. 257, for $4,000 indorsed by said Hollister and Page. On that day, said note maturing, it was renewed by said bank discounting for the marble company note No. 328, at four months, for the same amount, indorsed by the same parties as the other note, whereby the bank became the owner of No. 328. Page being president of that bank, on February 9, 1883, took the note to Philadelphia and delivered the same to said Borden, who then and there paid to Page therefor the sum of $4,000, less the discount. It did not appear what Page did with the money, further than, from the books of said bank, that the note was entered thereon as paid to the bank under date of February 13, 1883 ; and there was an entry of " paid " on the bills payable on the books of the Dorset Marble Company. Mr. Borden did not notice the bank numbering (13,157) on this note when he took it ; and testified that that would not suggest to him that the note had been used. It appeared that Borden continued to hold the note No. 328, and forwarded it for collection through several banks to the Rutland County National Bank, which caused

it to be duly presented at its maturity, and protested June 3, 1883, and to be returned to Borden; that Borden notified the company that he held the note, and urged payment and threatened suit thereon; that on August 23, 1883, Page took the note in suit to Borden, and representing that it would be paid at maturity, and that the defendant was perfectly responsible, induced Borden to give up the overdue note which he then held in exchange for the note No. 445, thus extending the time of payment until December 24, 1883; that Borden had no notice or knowledge of the terms and conditions on which defendant indorsed the note, nor of any fact now claimed to be inconsistent with the propriety of such exchange and extension, other than as herein stated. Said note No. 328 was then returned to the marble company and credited to Page, as shown by the books of the company, and then ceased to be a liability of the company. Said bank did not get the note No. 328 rediscounted in any other way than as above stated. In case of rediscount, the bank indorsed the notes to be rediscounted. This note did not show this. Borden, whose deceased wife was a relative of Page, had previously had transactions with him and lent him money. Borden did not at the time know what had been done with the note (No. 328) before he bought it, nor for what purpose Page wanted the money on it. On December 24, 1883, the note in suit fell due, and it was duly presented, protested, etc., and due notice was given the defendant, and it has never been paid. It was also found that Page was not only a director of the marble company, but he owned nearly one third of the stock thereof; and was agent for the raising of funds for the company; that the company was a corporation organized and located in Vermont, owning marble quarries and mills here, and produced, manufactured, and sold large quantities of marble; that its method of raising funds needed in its business was by issuing commercial paper, like the note in suit, indorsed by its officers and stockholders, and by Mr. Gleason; that this paper

was largely put into the hands of Gov. Page to negotiate for the use and benefit of the company as he saw fit; but he had no authority to use it for his private benefit; that Page was president of a bank in Rutland where the company did its bank business, and where more or less of its paper was discounted; and that Page infrequently advanced money for the benefit of the company by paying its checks or debts when it was out of funds. At the time the note was negotiated, and for many years prior thereto, Gov. Page was a man of very high standing in public and financial circles, and was engaged in railroad, manufacturing, and banking enterprises on a large scale, and was known in the eastern cities as a man of integrity and high character.

*W. H. Smith,* for the defendant.

This was the first note that plaintiff had had of these parties, and as a " prudent and careful man," he should have made inquiry. *Langdon* v. *Baxter Bank,* 57 Vt. 1.

The law applicable in this case, in this State, seems well settled in *Roth* v. *Colvin,* 32 Vt. 125, 135, 137, 138, and has been repeatedly adhered to by this court since. See *Gill* v. *Cubit,* 10 E. C. L. 154; *Prindle* v. *Phillips,* 5 Sandf. 157.

As to suspicious circumstances, see *Gould* v. *Stevens,* 43 Vt. 125.

*Henry A. Harman,* for the plaintiff.

The question as to the consideration of the note in suit is not nearly so strong for the defence as in *Churchill* v. *Bradley,* 58 Vt. 403.

On the facts, Mr. Borden became in August, 1883, a *bona fide* purchaser of the note in suit for value, and without notice of any equity here claimed by the defendant. He gave up to an officer of the Dorset Marble Company a note which was overdue; he forbore to sue the maker and indorser for a period of nearly four months. He had no knowledge or notice of the terms and conditions on which defendant indorsed the note

4

No. 445. Such an exchange is made for a valuable consideration, and precludes the introduction of any such defence.

*Passumpsic Bank* v. *Goss*, 31 Vt. 315 ; *Dixon* v. *Dixon*, Id. 450 ; *Quinn* v. *Hard*, 43 Vt. 375 ; *Russell* v. *Splater*, 47 Vt. 273.

And this is true, although the note may be sued in the name of an accommodation plaintiff. *Russell* v. *Splater*, *supra;* *Bennington* v. *Park*, 50 Vt. 273.

The opinion of the court was delivered by

TAFT, J. I. It is claimed by the defendant that Borden paid no consideration for the note in suit, for that the former note, No. 328, upon and for the surrender of which the note in suit was taken, was of no value in his hands. Whatever rights he may have had against the bank, or any of the parties to the note, save Mr. Page, it is certain that the note was a valid claim against the latter, in the hands of Borden. He had taken it from Page under Page's endorsement, and advanced him the amount of it in money, and however great the fraud, if any there was, on the part of Page in taking the note from the bank and transferring it to Borden, it would not affect the validity of the claim of the latter against Page as endorser. Page could make no defence to such claim. The note No. 328 was therefore of value in Borden's hands, and its surrender would constitute a valuable consideration for taking the note in suit. *Churchill* v. *Bradley*, 58 Vt. 403.

II. The defendant further claims that the note in suit was taken under such circumstances as to deprive Borden of the character of a *bona fide* holder, without notice of any equities existing in favor of the defendant. The rule in this respect is well stated in Rob. Dig. p. 100, s. 127. " The purchaser of negotiable paper must exercise reasonable prudence and caution in taking it. If the circumstances are such as ought to excite the suspicion of a prudent and careful man as to the validity of the paper as between the parties to it, or the propriety of the transfer, and

the purchaser takes it without inquiry, he does not stand in the position of a *bona fide* holder, but in the position of the party from whom he takes it, though he may have paid value for it." The question then arises whether there were any circumstances attending the taking of the paper by Borden, which ought to have excited the suspicions of a prudent and careful man, as to the paper, or the propriety of its transfer. If there were, Borden is chargeable with such facts as he would have learned had he actually made inquiry. If he had inquired he would have learned that Page had no right to transfer the note, except for certain specified purposes ; and admitting that it was not taken by Borden for such purposes, it is incumbent upon us to say whether any of the facts reported by the court ought to have put him upon inquiry. In this respect but two suggestions are made by the counsel for the defendant. First, the fact that the note for which the one in question was taken, was overdue, and that the one offered for it was good, and would be paid at maturity. The overdue note was given by the Dorset Marble Company, a corporation owning quarries and mills in Vermont, and producing annually a large quantity of marble, and raising funds by issuing commercial paper like the note in suit. Page was a man of high standing financially, engaged in great enterprises, with large financial dealings, and was known as a man of integrity and high character. Borden had theretofore had pecuniary transactions with him and had loaned him money. Now although the fact that the note, No. 328, was not paid at maturity might import insolvency in the sense in which the word is sometimes used, it was far from importing that the paper was worthless, and the fact that to take up the note in question, another was offered, with a name on it, that was represented as perfectly responsible with the further representation that the note would be paid at maturity, would tend to allay any suspicions that might otherwise arise. The defendant was president of the company making the paper ; and Borden might well think he was interested in sustaining its credit. Second,

Bromley *v.* Hawley.

the defendant contends that the amount of the note, four
thousand dollars, would suggest more careful scrutiny than if
the amount had been small.   In this case, we do not think it
would ;  whether it would or not in any given case would to a
great extent depend upon circumstances.   While it might
excite suspicion if a man of no means and of no business
should offer a piece of commercial paper for thousands of
dollars for sale, none would naturally arise, caused by the
amount of the paper, when offered by a man of large enter-
prises, and who would naturally need large sums in carrying on
an extensive and varied business.   More careful scrutiny would
be suggested if the paper was small ; for if Mr. Page, standing
as he did financially, engaged in banking and other enterprises,
had been endeavoring to raise money on a note for one hundred
dollars, instead of one for four thousand, and that in a place so
far away from his home and business as Philadelphia, it would
naturally suggest, at least in regard to him, and we think the
paper, that something was wrong.   We fail to see that there
was any fact that attended the taking of the note by Borden
that should have put him upon inquiry.   The defendant's
counsel contends with great vigor that this case is within the
rule enunciated by DWER. J., in *Pringle* v. *Phillips*, 5 Sandf.
137, in stating what the principle of the doctrine of con-
structive notice is, viz. :  " When a person is about to perform
an act by which he has reason to believe that the rights of a
*third party* may be affected, an inquiry into the facts is a moral
duty, and diligence an act of justice.   Hence he proceeds  at
his peril when he omits to inquire, and is then chargeable with
a knowledge of all the facts that by proper inquiry he might
have ascertained ;" and  that  it was incumbent upon Borden
to make inquiry at all events, the defendant being a third party.
We do not think this rule applies to a surety or endorser upon
a note offered for discount or sale, irrespective of any circum-
stances which should have put the party to whom it is offered
upon inquiry.   The rule, with the application to the extent
claimed in this case, does not prevail in this State, if anywhere.

Bromley *v.* Hawley.

If it did, then whoever takes from the holder a note with a surety or endorser takes it subject to all equities existing between the principal and surety or endorser; *i. e.*, if he *must* inquire in all cases where the rights of an accommodation party are involved. That such is not the law, see *Harrington* v. *Wright*, 48 Vt. 427. The surety upon a note is not a *third* party as to whose rights the taker must inquire unless the circumstances and facts are such as require it under the rule as above stated. We think it is affirmatively shown by the case that Borden took the note in good faith and stands as a *bona fide* holder without notice. Upon the facts reported by the County Court we think there was nothing to put Borden upon inquiry and no error in the judgment; and it is affirmed.

ROYCE, Ch. J., and POWERS, J., did not sit in this case, being absent.