## WILLIAM A. BLANEY *v.* GEORGE E. PELTON.

*Bills and Notes.     Negotiable Instruments.     Consideration.*
*Defence.*

1. It is presumed that the holder of a negotiable note is a *bona fide* holder; and when he produces it in court and proves its execution, he makes out a *prima facie* right of recovery, and is not bound to fortify his title to the note beyond the presumption, when the defence is an entire failure of consideration, and the defendant fails in such defence.

2. The defendant executed his negotiable note in part payment for a printing press, and, having used it for several months in the precise kind of work for which it was purchased, he exchanged it for another machine, realizing for the press more than he was to pay for it. He only complained that it would not do the work so well and so advantageously as the vendor represented; *Held,* that the defendant's claim came far short of the defence of an entire failure of consideration.

ASSUMPSIT upon two promissory notes. Trial by jury, March Term, 1887, TAFT, J., presiding. Verdict directed for the plaintiff. Affirmed.

The plaintiff introduced the notes in evidence and rested. The defendant then introduced evidence tending to show that prior to December 1, 1883, he had made a contract with the Goodwillie-Wyman Co., of Boston, Mass., to purchase of said company a printing press known as a No. 2 Whitlock Press; that by the contract the defendant was to turn in towards said press one old Hoe press at $550, and a horse and other merchandise at $200, and said Goodwillie-Wyman Co. took said property to Boston; that during the interval between the time of said contract and the time when said company could furnish the press sold the Goodwillie-Wyman Co. undertook to set up

in the defendant's office, in Rutland, a No. 1 Whitlock Press, for the use of the defendant, until they could deliver and set up the press sold ; that a man was sent from Boston to set up the press sent up for temporary use ; and while he was at work on said press, and some time after December 1, 1883, he was ordered to return home, as said Goodwillie-Wyman Co. had failed in business. The press was set up, but was not so as to work, and was not in condition to indicate whether it would work successfully or not. The defendant's testimony further tended to show that, when this notice was received that the Goodwillie-Wyman Co. had failed, the defendant went to Boston to try to save the property that he had delivered to the Goodwillie-Wyman Co. on said contract, and while there he made a contract for the press then standing in his office in Rutland. The defendant then introduced a copy of a written order signed by him for said No. 1 Press, and testified that at the time of making said contract the president of said Goodwillie-Wyman Co. represented to the defendant that said press would do any work any two-roller printing-press would do, and would run at the speed of one thousand impressions per hour ; that, as part of this contract, the defendant executed the two notes in suit, and that the other property named in said order was the same property delivered as aforesaid under the first above-named contract, and that said first contract was rescinded at the time of making this last contract.

The evidence of the defendant further tended to prove that the press purchased by this last contract was deficient in all the essential working qualities of a printing press ; that the bed, which should be perfectly true, was uneven ; that the cylinder was uneven and sprung ; that the delivery of printed sheets would not work with the other parts ; and that the ink fountain was entirely useless ; and that as a printing press it was entirely worthless and of no value.

The defendant testified, on cross-examination, that said press was of no value as a printing press, but that he kept it in his office for nine or ten months, and used it more or less

in his business, but that the extra help and expense of running it, and the inferior character of the work it would perform, rendered it of no value as a printing press. Among other witnesses, the defendant called the foreman of his office, who testified to the condition of the press, and that it was of no value as a printing press, but, on cross-examination, said it would be of some value in a country office for ordinary small coarse work, like auction bills, but was of no value to defendant.

The defendant also introduced evidence tending to prove that one George H. Robinson, of New York, was a stockholder and director of the Goodwillie-Wyman Co. up to, or about to, the time of its failure ; that he had advanced money to the company from time to time ; that all the property turned in by the defendant for said press and these two notes did not go into the hands of the receiver of said company, but all went into the hands of said Robinson ; and that said Robinson paid no value for them except he applied them upon the indebtedness of the company to him. The defendant also claimed from the depositions of the plaintiff and of said Robinson that the plaintiff paid no value for said notes, but received them as a gratuity from said Robinson a long time after one of them was due.

*J. C. Baker*, for the defendant.

Robinson was not a *bona fide* purchaser of the notes. He was a creditor of an insolvent corporation, and absorbed its property after its failure. *Sanford* v. *Norton*, 14 Vt. 234 ; *Gould* v. *Stevens*, 43 Vt. 125 ; *Langdon v. Baxter Nat. Bank*, 57 Vt. 1 ; *Russell* v. *Buck*, 14 Vt. 147 ; *Roth* v. *Colvin*, 32 Vt. 125.

He took these notes after one of them was dishonored. It was sufficient to put him on inquiry. Where a note is given upon a consideration which has failed by reason of fraud entering into it, no offer to rescind the contract is necessary. *Kelly* v. *Pember*, 35 Vt. 183.

Blaney *v.* Pelton.

The court directed a verdict for the plaintiff. This was error if there was any evidence tending to establish a legal defence. *Rogers* v. *Judd*, 6 Vt. 191; *Jones* v. *Booth*, 10 Vt. 268; *Wemet* v. *Missisquoi Lime Co.* 46 Vt. 458; *Lewis* v. *Pratt*, 48 Vt. 358; *Reed* v. *Reed*, 56 Vt. 492.

The question of whether defendant offered to rescind was for the jury. *Gates* v. *Bliss*, 43 Vt. 299.

*Lawrence & Meldon*, for the plaintiff.

Robinson took these notes while current and applied them on the indebtedness of the company to him. This constitutes him a *bona fide* holder for value, and neither he nor his endorsee could be affected by any equities that might exist between the original parties. *Russell* v. *Splater*, 47 Vt. 273; *Noyes* v. *Landon*, 47 New Eng. Rep. 724; 59 Vt. 569.

If the defendant would avail himself of a failure of consideration, he should return, or offer to return, the property for which the notes were given. 1 Pars. 204-205; *Thornton* v. *Wynn*, 25 U. S.; 12 Wheat, 183 (6 L. ed. 595). See *Kase* v. *John*, 10 Watts, 107.

But he admits that he did not do this, but instead turned it in trade for another press, whereby he received the full price he paid for it, which would render him liable on the notes. *Foster* v. *Phaley*, 35 Vt. 303.

But even if there had been a partial failure of the consideration, it would be no defence to this suit. Rev. Laws, s. 911; *Farrar* v. *Freeman*, 44 Vt. 63; *Thrall* v. *Horton*, Id. 386. And this, although the holder took the notes when over due and with notice of such partial failure. Rev. Laws and *Thrall* v. *Horton*, *supra*.

The opinion of the court was delivered by

POWERS, J. This is an action of assumpsit upon two notes made payable to the order of the Goodwillie-Wyman Co. The defence is an entire failure of consideration.

When the plaintiff produced the notes in court, and proved

their execution, he made out a *prima facie* right of recovery. The holder of negotiable paper is presumed, in the first instance, to be a *bona fide* holder.

If the defendant offers evidence tending to prove fraud in obtaining the note, or an entire failure of consideration for it between the original parties, the burden of proof is thereby cast upon the plaintiff to show that he was an innocent purchaser, for value, of the notes while they were current. This burden, however, is not cast upon the plaintiff until the consideration is impeached by the defendant. Hence no inquiry into the title of Robinson or the plaintiff is demanded until it is made necessary by the state of the defendant's case.

This case is quite unlike *Cragin* v. *Fowler*, 34 Vt. 326, and *Clough* v. *Patrick*, 37 Vt. 421, cited by defendant. In those cases the thing purchased had no value whatever. The rule was stated by Judge PIERPOINT in Cragin's case as follows: "The party has the right to that for which he bargained substantially, and it must be of some value or he is not bound to pay for it."

If the article bought does not fully come up to the representations of the vendor, but still is an article of the kind bargained for, and will perform the work for which it is designed, though less efficiently than represented, the purchaser in a proper case may have his action for deceit or false warranty. But this comes far short of the elements essential to the defence of an entire failure of consideration.

In Cragin's case the machine was bought as and for a machine to be operated by horse power. It could not be operated at all by that power. If this press had been bought as and for a steam-power press, but could be operated only by hand power, the case would be parallel with Cragin's case. The press, however, worked in the manner contemplated by the purchaser, and he only complains that it will not do the work contemplated so well and so advantageously as the vendor represented.

The defendant used it for several months doing the precise

Goodrich v. Marble Co.

kind of work for which it was purchased, though it came short of his expectations, and finally exchanged it for another machine, realizing in the exchange more for the press than he was to pay for it. It would seem rather novel to hold that a purchaser, who gets his money back for an article he buys, can claim that he received no value. The defendant's own testimony disclosed this state of facts; hence, no duty was cast upon the plaintiff to fortify his title to the notes beyond the presumption arising from his holding them.

Judgment affirmed.