LIMERICK NATIONAL BANK *vs.* J. B. ADAMS, et al.

October Term, 1897.

Present: Ross, C. J., ROWELL, TYLER and THOMPSON, JJ.

*Promissory Note—Bona Fide Holder for Value—Notice of Fraudulent Inception—General Scheme to Defraud—Misrepresentations to Others than Defendants—Evidence—Presumption in Support of Ruling Below—Motion to Direct Verdict.*

In an action upon a promissory note the law presumes, upon the mere production of the note by the plaintiff, that he is a *bona fide* holder for value, and the fact that he alleges and introduces evidence in his opening to prove it, does not alter the course of the trial, nor affect the defendant's right to show that the note was void for want of consideration and fraud, between the original parties, and thus to put upon the plaintiff the burden of showing that he was not chargeable with knowledge of the fraud.

The defendant is not held to any particular line of proof by his notice when the defense that he makes is one that he is entitled to make under the general issue without any notice.

The defendant to an action by an indorsee upon a promissory note may show, under the general issue, that the note is void, as between the original parties, for want of consideration and fraud, and that the plaintiff is chargeable with notice thereof.

V. S. 1150, requiring a defense to be set forth by way of plea or notice, does not apply where the defense is of such a character as to show that no cause of action ever existed.

The defendants' evidence tending to show a general scheme to defraud the defendants and others, it was competent for the defendants to show the misrepresentations made by the payee, in furtherance of the scheme, to such others as well as to the defendants themselves.

The defendants' evidence tended to show that the payee of the note in suit induced the defendants to sign by representing that the note should not be treated as complete until signed by thirty responsible men. As tending to substantiate this claim, it was admissible to show by one who had undertaken to sign, but who did not sign and was not a defendant, that the payee in attempting to procure his signature told him that all were going to sign and that if he, the witness, did not sign he would be sued at once,—for the statement was an inseparable part of an admissible conversation and was in itself admissible as tending to show the importance attached to the signing of the note by all.

One of the defendants was properly allowed to testify in behalf of his co-defendants that he was financially irresponsible, to the knowledge of the payee, when he signed the note.

When evidence is admissible if properly limited, it is to be presumed, in support of the ruling admitting it, that it was so limited, the contrary not appearing.

The court properly excluded the plaintiff's offer to show that, before its purchase of the note in suit from the payee, it had bought of him similar notes signed wholly by people of the town in which the plaintiff bank is located, and that the signers of those notes knew that the plaintiff was the holder and owner thereof before this action was commenced.

In an action upon a promissory note by the indorsee against the maker, fraud and want of consideration between the original parties being shown, the burden is cast upon the plaintiff to prove that he is a *bona fide* holder for value.

This court still adheres to the doctrine enunciated in *Roth* v. *Allen*, 32 Vt. 135, that to constitute one a *bona fide* holder of negotiable paper he must have taken it without knowledge of facts or circumstances that would lead a careful and prudent man to suspect that the paper was invalid as between antecedent parties.

There was no error in permitting the jury to consider where the defendants lived and that the plaintiff bank was located in another state, as a circumstance bearing upon the question whether the plaintiff was chargeable with notice of the fraud.

The evidence tended to show that such facts and circumstances were brought to the knowledge of the plaintiff as to put it upon inquiry, and the court properly refused to direct a verdict.

GENERAL AND SPECIAL ASSUMPSIT. Plea, the general issue with notice. Trial by jury at the December Term, 1896, Orange County, *Start,* J., presiding. Verdict and judgment for the defendants. The plaintiff excepted.

There was a special count upon a promissory note for one thousand dollars, dated October 9, 1894, payable to H. P. Reynolds or bearer in one year from date, signed by the defendants and delivered and assigned by Reynolds to the plaintiff for value before maturity. The note in suit is one of three of similar amount payable in one, two and three years respectively. These notes were left with the plaintiff for discount the latter part of October, 1894, by the payee. On November 10, the plaintiff's cashier, of his own motion, wrote to the president of the Randolph (Vt.) National Bank, in vicinity of which the maker resided and at which the notes were payable, inquiring as to the financial responsibility of the signers. On Saturday, Nov. 3, 1894, the plaintiff's discount committee, consisting of its president, vice-president and another director, in the presence of the cashier, voted and directed the cashier to discount the notes. At the commencement of business on Monday, November 5th, the notes were discounted by deducting from the face value of each the sum of $160.44, although the notes bore interest from their date, and cashier's checks were given for the avails thereof, to wit, $2517.10. On November 6th, a reply came in answer to the letter of inquiry, stating that the signers were not financially responsible. The plaintiff is located at Limerick, Maine.

Concerning the testimony of Folsom, the exceptions show that the agents of Reynolds knew that he was financially irresponsible when he signed the note, and that it did not appear whether the other defendants aside from Folsom knew it or not.

*Darling & Darling* and *W. A. Lord* for the plaintiff.

The court erred in permitting the defendants to show fraud, failure of consideration and non-delivery, as between the original parties, without offering to connect the plaintiff with knowledge thereof. The peculiar condition of the pleadings and of the plaintiff's evidence made this evidence as offered inadmissible. The pleadings required the plaintiff to prove that it gave value for the note, in opening its case, and it did so. The plaintiff thus stood in a condition of a holder for value, not by force of a legal presumption but by virtue of proof. Therefore evidence of fraud between the original parties, unaccompanied by an offer to connect the holder with knowledge thereof, was inadmissible, for the only ground upon which it could have been admitted, namely, to rebut the legal presumption, did not exist. The defendants' notice bound them to prove that the facts constituting fraud were known to the plaintiff when it discounted the paper.

It was error to permit the witness Adams to testify that at the time he signed the notes his total liability thereon was stated by the payee's agents to be but one hundred dollars, the notes themselves indicating a joint and several liability for the whole amount. *Gillett* v. *Ballou*, 29 Vt. 296 ; *Isaacs* v. *Elkins*, 11 Vt. 679 ; *Bradley* v. *Bentley*, 8 Vt. 243. To take this case out of the general rule on the ground of fraud it should appear that the plaintiff had knowledge thereof and that the witness was misled and guilty of no negligence. He had ample opportunity to examine and see what he was signing and having neglected to do so cannot be heard to complain. *Chapman* v. *Rose*, 56 N. Y. 137.

It was error to allow the defendant Folsom to testify that at the time he signed the notes he was financially irresponsible. It could not be used as a part of the witness's own defence. He understood that to make the notes valid all the signers must be responsible, but by signing knowing that he was irresponsible, he waived this condition. *Sear-*

*gent* v. *Seward,* 31 Vt. 509. Moreover, he was perpetrating a fraud upon the other signers. Nor can it avail the other defendants because it does not appear that any of them were ignorant of Folsom's circumstances. *Burton* v. *Blin,* 23 Vt. 151.

The ruling admitting Parish's testimony was erroneous in not restricting him to the statement of *similar* fraudulent inducements but permitting him to testify as to any and all inducements. That part of the witness's answer wherein a threat to sue was stated to have been made was not in corroboration of any evidence in the case and was a matter wholly *inter alios.*

The plaintiff should have been allowed to show that other paper, similar in character to the note in suit, signed by parties residing in Limerick, had, to the knowledge of the signers, been discounted by the plaintiff, prior to the discount of the note in suit. It was admissible as showing the plaintiff's good faith, for it tended to show that there was nothing unusual in the transaction in question and that the bank took the paper in suit in due course of business. Its exclusion was especially harmful in view of that portion of the charge wherein the jury were told that they were at liberty to consider the distance between Limerick, Maine, and Orange County, Vermont, as an element in determining the bank's prudence in discounting the paper in suit.

The plaintiff's motion for a verdict should have been granted. There was no dispute whatever as to the circumstances under which the plaintiff discounted this note. *St. Johnsbury* v. *Thompson,* 59 Vt. 311; *Latremouille* v. *B. & R. R. R.,* 63 Vt. 336.

The charge as to what constitutes a *bona fide* holder was erroneous. It does not make the good faith of the plaintiff the criterion, but permits the jury to apply the sole test of care and prudence. Carelessness and imprudence may be evidence of bad faith, but are not necessarily the same thing.

The true rule is that established by the early English decisions, viz.: The title of the holder of negotiable paper, acquired before due for a valuable consideration, is not affected by the fraud of a prior party, in the absence of actual notice, without proof of bad faith on the part of the holder. *Miller* v. *Race*, 1 Burr. 453; *Lawson* v. *Weston*, 4 Esp. 56. It is true that this rule was afterward changed, and that adopted by the court in the case at bar substituted, and that the new rule was followed in England as long as Lord Tenterden remained on the bench. *Gill* v. *Cubitt*, 3 B. & C. 466; *Snow* v. *Peacock*, 3 Bing. 408; *Down* v. *Halling*, 4 B. & C. 330. The *Gill* v. *Cubitt* rule created great dissatisfaction in commercial circles, was soon gradually relaxed, and in the case of *Goodman* v. *Harvey*, cited below, was squarely overruled, and the original rule restored, which has never been departed from in England. *Crook* v. *Jadis*, 5 B. & Ad. 909; *Backhouse* v. *Harrison*, 5 B. & Ad. 1098; *Goodman* v. *Harvey*, 4 A. & E. 870; *Uther* v. *Rich*, 10 A. & E. 787; *Arbouin* v. *Arnderson*, 1 Q. B. 498. In this country, the earlier decisions seem to follow the *Gill* v. *Cubitt* rule. But now, by the overwhelming weight of authority, and in the states of the greatest commercial importance, the rule as we claim it prevails. *Goodman* v. *Simonds*, 20 Howard, 343; *Murray* v. *Lardner*, 2 Wall. 110; *Clark* v. *Evans*, 66 Fed. 263; *Smith* v. *Livingston*, 111 Mass. 342; *Magee* v. *Badger*, 34 N. Y. 247; *Chapman* v. *Rose*, 56 N. Y. 137; *Cheever* v. *P. C. & L. E. R. R.*, 150 N. Y. 59; 34 L. R. A. 69; *Hamilton* v. *Vought*, 34 N. J. Law 187; *Davis* v. *Seeley*, 71 Mich. 214; *Bank* v. *Morgan*, 165 Pa. St. 199; *Hopkins* v. *Hammond*, 42 Ill. App. 584; *Hamilton* v. *Marks*, 63 Mo. 173; 4 A. & E. Enc. of Law, (2d Ed.) 301.

The rule as defined does not materially differ from that applied in equity, where it is held that if mere want of caution, as distinguished from fraudulent and wilful blindness, is all that can be imputed, the doctrine of constructive

notice does not apply. *Jones* v. *Smith*, 1 Hare 55; *Roth* v. *Colvin*, 32 Vt. 125; *Adams* v. *Soule*, 33 Vt. 549.

Even were the charge correct in point of law, it was not warranted by the evidence, for there were no circumstances attending the taking of this paper by the bank, which ought to have excited the suspicions of a prudent and careful man. *Birney* v. *Martin*, 3 Vt. 236; *Fullam* v. *Cummings*, 16 Vt. 697; *Manwell* v. *Briggs*, 17 Vt. 176; *Dean* v. *Dean*, 43 Vt. 337; *Bromley* v. *Hawley*, 60 Vt. 46; *Cone* v. *Baldwin*, 12 Pick. 545; *Goddard* v. *Lyman*, 14 Pick. 268; *Kellogg* v. *French*, 15 Gray 354; *Estabrook* v. *Boyle*, 1 Allen 412; *Gardner* v. *Gager*, 1 Allen 502; *Hotchkiss* v. *Shoe & Leather Bank*, 21 Wall. 354.

That portion of the charge relating to the fact that the defendants lived in Orange County and the plaintiff is located in a neighboring state is error. The court had already told the jury that circumstances which ought to excite the suspicions of a prudent man would defeat recovery, or in other words, that such circumstances were evidence. If that was correct it was error to allow the jury to say whether a certain fact was a circumstance, for that was equivalent to allowing them to say whether the fact was evidence. The jury were thus permitted to pass upon both the admissibility and weight of evidence. *Quinn* v. *Halbert*, 57 Vt. 178; *State* v. *Gaffney*, 56 Vt. 451.

*N. L. Boyden*, *J. D. Denison* and *R. M. Harvey* for the defendants.

THOMPSON, J. The plaintiff claimed to recover as the *bona fide* purchaser for value of the note in suit before it was due.

On the part of the defendants, the evidence tended to show that as between the original parties to the note, it was void for want of consideration and by reason of the payee's fraud in obtaining it.

In its opening, the plaintiff introduced evidence tending to

show that it was a *bona fide* holder of the note for value.
The law presumed this without other evidence than the
production of the note by the plaintiff, the contrary not
appearing.   The case standing thus, the ordinary course of
such a trial was not thereby changed, nor was it affected, by
the fact that the plaintiff alleged in its declaration that it
gave value for the note.   Notwithstanding this aspect of the
case, when the plaintiff rested it was competent for the
defendants to show that the note was without consideration
and void for fraud as between the original parties, and their
evidence tending to show such to be the fact was properly
admitted as a step in their defence, and for the purpose of
casting the burden upon the plaintiff of showing that it
was not chargeable with knowledge of the fraud, if the
fraud alleged was established.   Nor were the defendants
held to any particular line of proof by the allegations in
their notice, for under the general issue they could show
that the note was void for the causes alleged, and that the
plaintiff was chargeable with notice thereof when it
purchased it.   V. S. § 1150, requiring a defence to be set forth
by way of plea or notice, does not apply where the defence is
of such a character as to show that no cause of action ever
existed.   *Gregory* v. *Tomlinson*, 68 Vt. 413.

From the evidence of the defendants it appeared that H.
P. Reynolds, the payee of the notes, by his agent, one
Wolcott, came to certain of the defendants with a horse,
which he claimed to be an imported German coach stallion,
representing to them that he was organizing a stock
company to which to sell the horse.   In his interviews with
such of the defendants as he saw, he was accompanied and
assisted by one Griswold, who lived in the vicinity of and
was well known to all the defendants.   Griswold and
Wolcott represented, in substance, that in order to make a
sale of the horse, thirty good, responsible men must take
shares in him at one hundred dollars each—the price of the
horse being $3000—and that all of the thirty must sign the

note, and that unless thirty shares were so taken there was to be no sale. Each person taking stock was obliged to sign what was termed a "stock book," which was, in substance, an agreement to take said shares in the horse. After several signers to the stock book had been procured, Wolcott left, and one Niece and one Schoonmaker appeared, who, in connection with Griswold, went on with the work of procuring signers to the stock book upon representations substantially similar to those formerly made by Wolcott and Griswold. Later, Niece, Schoonmaker and Griswold came to the defendants with the notes in question, representing to each one, in substance, that all of the thirty shares had been taken and demanding that the defendants sign the notes. It was then represented to them that the notes were not to be valid or complete, and not to be considered as delivered, until thirty financially responsible men had signed them, and until a meeting of all the signers thereto should be had, at which meeting Niece was to be present with the notes for the examination and approval of all the signers, and a company was to be organized, and the horse turned over to the company. Under these representations and conditions, each of the defendants signed the notes.

The evidence of the defendants tended to prove the falsity of the representations made to them by the alleged agents of Reynolds; that the horse was never delivered to the signers of the notes; that there was never any valid organization of a stock company; that the notes were not signed by more than twenty persons, and not all of these were financially responsible, and that certain other details which had been agreed to be consummated before the notes should become valid and binding, had never been consummated. The notes on their face indicated a joint and several liability for the full amount.

Against the exception of the plaintiff, J. B. Adams, one of the defendants, was permitted to testify that at the time he

signed the notes his total liability thereon was represented to him by the agents of Reynolds to be only $100. One Luke Parish was improved as a witness by the defendants. It appeared that he had signed the stock book, but not the note, and was not a defendant. The defendants' counsel offered to show by him the representations made to him by Niece, when the latter presented him the notes to sign, as to the necessity of all signing in order to make the notes valid. While testifying with respect to the subject matter of this offer, the witness was asked, "In the course of the conversation, did he, Niece, tell you anything about whether there was any necessity of all signing?" to which the witness answered, "He said they were all going to sign, and if I didn't sign he should sue me right away." To this answer, the plaintiff excepted. The testimony of the witnesses Adams and Parish was admissible to show the manner in which Reynolds, the payee of the note, by his agents, operated the scheme to secure the signers to the note. What Parish said about being threatened with a suit if he did not sign the note, when told that all were going to sign it, was an inseparable part of the conversation and for that reason admissible; but it also tended to show the emphasis put upon all signing the note, as claimed by the defendants.

Defendant Folsom was a competent witness for the other defendants to show that he was financially irresponsible when he signed the notes. It is not necessary to decide whether, if financially irresponsible, it could avail him by way of defence. If admissible for any purpose, plaintiff's exception cannot avail it, as it does not appear that the court was requested to limit its application, nor does it appear that it was not admitted in support of the defence set up by his co-defendants, and so limited in its application.

The county court properly excluded the plaintiff's offer to show that before the purchase of the note in suit, it bought

of Reynolds similar notes signed wholly by people of the town in which the plaintiff bank is located, and that the signers of these notes knew that the plaintiff was the holder and owner thereof before this suit was brought.

The evidence offered raised an immaterial issue. It had no bearing upon the question whether in the transaction in which the plaintiff bought the notes in controversy, it was a *bona fide* purchaser for value. That on another occasion, in the purchase of other notes, it had been such a purchaser, had no tendency to prove that it was so in respect to the note in suit.

There seems to have been no question made on trial but that the note in suit was without consideration, and procured by fraud on the part of the payee. Fraud and want of consideration being shown, the burden was cast upon the plaintiff to show that it was a *bona fide* holder for value. *Clough* v. *Patrick*, 37 Vt. 421; *Blaney* v. *Pelton*, 60 Vt. 275; *Stevenson* v. *Gunning's Est.*, 64 Vt. 601. This burden was not changed by the pleadings nor by the plaintiff's case as made in its opening.

In its charge to the jury, the court defined a *bona fide* holder for value to be a holder of negotiable paper who takes it before maturity for a valuable consideration in the usual course of business without knowledge of facts which impeach its validity as between the antecedent parties, and without knowledge of facts or circumstances that would lead a careful and prudent man to suspect that the paper was invalid as between antecedent parties. To the words in this definition "and without knowledge of facts or circumstances that would lead a careful and prudent man to suspect that the paper was invalid as between antecedent parties," the plaintiff excepted. The charge correctly stated the law of this State on this subject. *Roth* v. *Colvin*, 32 Vt. 125; *Gould* v. *Stevens*, 43 Vt. 125; *Savings Bank* v. *National Bank of St. Johnsbury*, 53 Vt. 82; *Hill* v. *Murray*, 56 Vt. 177; *Bromley* v. *Hawley*, 60 Vt. 46. We are now

asked to overrule the decisions of this court on this subject. The question was fully considered in *Roth* v. *Colvin, supra.* After carefully considering the cases holding the contrary doctrine, the court then said in regard to the rule then adopted: "In our judgment, the doctrine is best sustained by authority, but if the question were wholly new, and we were called upon to establish a rule for the first time, we should feel no hesitation in saying that such should be the rule to govern the purchase and transfer of negotiable securities." This court still adheres to the same view.

In the course of its charge, the county court said:

"It is claimed by the defendants that the circumstance that these defendants live here in Orange county, and that this plaintiff bank was located in a neighboring state, is a circumstance which should be considered; that it is a circumstance that should put a reasonable man upon inquiry. The weight to be given this circumstance, if a circumstance, is all for you, and it is for you to say whether it is a circumstance that would lead a careful and prudent man to suspect that there was anything wrong about this note." To this, the plaintiff excepted.

There was no error in permitting the jury to consider this circumstance as bearing upon the question of whether the plaintiff was chargeable with notice of the fraud, as it bore with other evidence of the same tendency directly upon that question.

The evidence tended to show that such facts and circumstances were brought to the knowledge of the plaintiff in respect to the note before its purchase as to put it upon its inquiry in regard to its validity, and to lead it as a careful and prudent man to suspect that the paper was invalid as between antecedent parties. Hence, the court below properly denied the plaintiff's motion to direct a verdict in its favor.

"The question whether the holder of current negotiable paper has taken it with or without notice of defence

between prior parties, whether he has exercised good faith in the transaction or has been guilty of negligence or want of proper caution, are always questions of fact to be submitted to and determined by the jury. All the circumstances attending the transaction, the condition of the several other parties, and all other facts that bear upon such an issue, are only evidence for the jury to weigh in deciding it." *Roth* v. *Colvin*, 32 Vt. 125.

*Judgment affirmed.*