CAPITAL SAVINGS BANK & TRUST CO. *v.* MONTPELIER SAV-
INGS BANK & TRUST CO.

October Term, 1904.

Present: TYLER, MUNSON, START, WATSON, HASELTON and POWERS, JJ.

Opinion filed January 26, 1905.

*Negotiable Paper—Checks Originating in Fraud—Bona Fide
Purchaser—Requisite Vigilance—Burden of Proof—
Findings of Trial Court—Failure to Find Requisite Vig-
ilance of Plaintiff—Reversal of Failure to Find.*

When the payee of a check, which, on account of his fraud, is invalid
as between him and the drawer, transfers it to a third person who
brings suit thereon against the drawer, the burden is on the plain-
tiff to show that he took the check in the usual course of business,
for valuable consideration, without knowledge of facts which im-
peached its validity as between the original parties thereto, and
without knowledge of facts or circumstances which would lead a
careful and prudent man to suspect that the check was invalid as
between the antecedent parties.

In such case, if the circumstances would excite the suspicion of a
prudent man as to the validity of the paper as between the an-
tecedent parties to it, and the purchaser takes it without inquiry,
he is not a *bona fide* purchaser, though he paid value for it.

In such case, whether the plaintiff, as a careful and prudent person,
had reason to suspect, when it took the check, that it was invalid
as between the parties thereto, is a question of fact.

A check for $1,000 was invalid as between the drawer and payee be-
cause of the latter's fraud. The payee, for valuable consideration,
transferred the check to the plaintiff, who brought suit thereon
against the drawer. The trial court found that when the plaintiff
took the check its officers knew that the payee was financially
irresponsible and a forger; that he had, four days before, defrauded
the plaintiff by procuring it to discount, as genuine, a note for
$300, on which he had forged the name of the surety and the ap-
proval of plaintiff's president; that plaintiff's president had reason
to suspect—what was the fact—that the payee had forged the

name of the surety to a $1,700 note which he had fraudulently pro-
cured the plaintiff to discount, as genuine, and which it then
owned. *Held*, that the failure of the trial court to find that the
plaintiff, as a careful and prudent person, had no reason to sus-
pect, when it took the check, that the same was invalid as between
the original parties thereto will not be reversed; and that it can-
not be said that the equities are with the plaintiff and it is en-
titled to recover the amount of the check notwithstanding the
failure of the trial court to make said finding.

ASSUMPSIT on a bank check. Plea, the general issue.
Trial by court at the March Term, 1904, Washington County,
*Rowell,* J., presiding. Judgment for the defendant on the
facts found. The plaintiff excepted.

The court found that Harkness was a physician who lo-
cated at Montpelier some three or four years before the trial;
that he soon began to procure small loans at the plaintiff bank
on notes signed by himself and purporting to be signed by
H. S. Peck; that some of the notes, and perhaps all, were for
a time in fact signed by Peck; that these notes were paid and
taken up from time to time by renewals for a larger amount,
and the difference paid to Harkness in money; that matters
ran along thus till October 31, 1902, when Harkness executed
and delivered to the plaintiff a note for $1,700 of that date on
demand, signed by himself and purporting to be signed by
said Peck, for which he received two notes then in the bank
and the difference, $184.76, in money. It did not appear
whether Peck's name was forged on the notes taken up, but
it was forged on said note for $1,700.

On March 2, 1903, Harkness executed and delivered to
the plaintiff a note of that date for $300 on six months, which
also purported to be signed by Peck. He received for that
note a note for $150 dated July 2, 1902, on one year,

signed by him, and purporting to be signed by Peck, and the balance, less discount, was paid to him in money.

Harkness forged Peck's name on the note for $300, and also forged the approval of plaintiff's president on it, and the plaintiff took the note when its president was not in. But he soon came in, and knowing he had not approved it, took it at once to Mr. Harkness' office, when Harkness admitted to him that he forged both his approval and Peck's name thereon. Harkness asked plaintiff's president what he was going to do about it, and without telling him, plaintiff's president asked him what he was going to do about it, and intimated that he had better fix it up. Harkness said that if they would wait until the next night he would pay the bank all he owed it and that he would send for his friends to come, and named his brother who lived in Charlotte. The matter was left in that way, Harkness understanding that if he fixed it up then it would be all right so far as the plaintiff was concerned. Harkness saw plaintiff's president the next day, and told him it would be impossible for him to fix it up that night as he had promised, for his brother had not come as he expected, but that he had no doubt he could fix it the next day. The next day, which was March 6, 1903, Harkness presented to the defendant bank a note for $2,060 on six months, signed by himself and purporting to be signed by H. S. Peck, Mrs. Nellie Barstow, and Walter Gates, but all the names except that of Harkness were forged by Harkness. The check in suit was given to Harkness as part of the consideration of said note, and the balance was paid to him in money.

About three o'clock in the afternoon of the same day, the closing hour of the plaintiff's bank, Harkness came to the bank with the check in suit, indorsed it in blank and delivered it to the plaintiff bank and also paid the bank $1,000 in money

and took up the note for $1,700, and the note for $300, and went to the office of plaintiff's president and held them out to him and asked him if he wanted them. The president saw that the bank's stamp of payment was on them, and said he did not want them, but was glad that they were paid, and told Harkness to "go and do so no more." Thereupon Harkness crushed the notes in his hand and went out. Before Harkness came to the plaintiff bank as aforesaid, he telephoned to it and inquired the amount of said notes and the treasurer told him what the amount was.

About three o'clock that afternoon the defendant bank discovered the forgery of the note it had taken, and about seven o'clock that evening, learning that the plaintiff bank had the check, notified it that the check was obtained from the defendant by fraud and forgery, and that the defendant would not pay it. The check came into the plaintiff bank after the time for exchanging checks with the defendant that day, the course of business between the parties being to exchange checks every day about two o'clock, and so was not presented till the next day, when payment was demanded and refused, and the check protested.

At the time plaintiff's president talked with Harkness as aforesaid, he feared that Peck's name was forged on the note for $1,700 as well as on the note for $300.

After reciting the above facts, the "Facts Found" concludes as follows: "On these facts we fail to find that the plaintiff, as a careful and prudent concern, had no reason to suspect when it took said check that it was invalid as between the original parties thereto."

*T. J. Deavitt,* and *Edward H. Deavitt* for the plaintiff.

From the facts found the court should have inferred that the plaintiff had no reason to suspect, at the time it took

the check, that the same was invalid between the original parties thereto. The findings and judgment of the court are reviewable to this extent. *Card* v. *Sargent,* 15 Vt. 393; *Bigelow* v. *Congregational Society,* 15 Vt. 370; *Stevens* v. *Hewett,* 30 Vt. 262; *Bromley* v. *Hawley,* 60 Vt. 46; *In Re Mather's Will,* 76 Vt. 209.

The plaintiff was a *bona fide* purchaser of the check for value, while current. An acceptance of the check and surrender of the notes constituted a payment of a debt. *Russell* v. *Splater,* 47 Vt. 273; Daniel Neg. Inst. § 832; *Hutchins* v. *Olcutt,* 4 Vt. 549; *Wemet* v. *Lime Co.,* 46 Vt. 458; *Bank of Republic* v. *Baxter,* 31 Vt. 101.

The plaintiff had no knowledge that the check had been procured by fraud. Actual knowledge, and not constructive knowledge, is the test of good faith in such a case as this. *Ormsbee* v. *Howe,* 54 Vt. 182; *Limerick Bank* v. *Adams,* 70 Vt. 132; *Jones* v. *Gordon,* 4 Eng. Rul. Cas. 416; *Powers* v. *Ball,* 27 Vt. 662.

But, if good faith is not the test, and the standard of a prudent man under the circumstances should be applied, the facts found by the court below show that the plaintiff had no reason to suspect fraud. *Bank* v. *Goss,* 31 Vt. 315; *Bromley* v. *Hawley,* 60 Vt. 46; Daniel Neg. Inst. § 775; *Credit Co.* v. *Howe Machine Co.,* 54 Conn. 357; *Brush* v. *Scribner,* 11 Conn. 388.

*M. E. Smilie* for the defendant.

START, J. The action is assumpsit, declaring on a bank check for one thousand dollars, issued by the defendant to W. R. Harkness, and by him indorsed to the plaintiff. The trial court found and filed its findings as is required by the statute. The check was obtained by Harkness from the de-

fendant by fraud, and was invalid as between Harkness and the defendant. The plaintiff claimed to recover as a *bona fide* purchaser for value without notice of the fraud.

The court failed to find that the plaintiff, as a careful and prudent concern, had no reason to suspect when it took the check that it was invalid as between the original parties thereto, and rendered judgment for the defendant to recover its costs. To the failure to find that the plaintiff had no reason to suspect that the check was invalid between the original parties, and to the rendition of judgment for the defendant the plaintiff excepted. No other questions are reserved, and these only will be considered.

The check having been obtained by Harkness from the defendant through the fraud of Harkness, it was invalid as between the original parties thereto, and the burden was on the plaintiff to show that it took the check in the usual course of business, for a valuable consideration, without knowledge of facts which impeached its validity as between the original parties, and without knowledge of facts or circumstances that would lead a careful and prudent man to suspect that the check was invalid as between the antecedent parties. *Roth* v. *Allen,* 32 Vt. 125; *Gould* v. *Stevens,* 43 Vt. 125; *Savings Bank* v. *National Bank,* 53 Vt. 82; *Bank* v. *Adams,* 70 Vt. 132, 40 Atl. 166; *Bank* v. *Baxter,* 31 Vt. 101.

In *Bromley* v. *Hawley,* 60 Vt. 50, 12 Atl. 222, it is said, that the purchaser of negotiable paper must exercise reasonable prudence and caution in taking it, if the circumstances are such as ought to excite the suspicion of a prudent and careful man as to the validity of the paper as between the parties to it, or the propriety of the transfer, and the purchaser takes it without inquiry, he does not stand in the position of a *bona*

*fide* holder, but in the position of the party from whom he takes it, though he may have paid value for it.

The question of whether the plaintiff, as a careful and prudent concern had no reason to suspect when it took the check that it was invalid as between the antecedent parties thereto was a question of fact for the determination of the trial court, and that court having failed to find this fact in favor of the plaintiff, the plaintiff failed to establish a fact essential to its right of recovery. In the circumstances shown by the findings, it cannot be said as a matter of law that the plaintiff was not put upon inquiry respecting the validity of the check as betwen the original parties thereto.

It is found, that at the time the plaintiff took the check, its officers knew that Harkness was not responsible and would not loan money upon his credit; that on the 6th day of March, 1903, Harkness procured the check of the defendant and on the same day transferred it to the plaintiff; that on the second day of the same month Harkness had procured a note to be discounted by the plaintiff for three hundred dollars on which the name of the surety and the approval of the plaintiff's president were forged; that on the same day Harkness admitted to the plaintiff's president that he forged the approval and the name of the surety, and asked the president what he was going to do about it, and without telling him, the president asked him what he was going to do about it, and intimated that he had better fix it up, and asked him if he could not pay back the three hundred dollars he had received on the note, and when Harkness paid this note on March 6th, 1903, out of the check in question, the plaintiff's president said to him "go and do so no more." These and other facts and circumstances, which appear in the findings, were for the consideration of the trial court, and its failure to find that the plain-

tiff as a careful and prudent concern had no reason to suspect, when it took the check, that it was invalid as between the original parties thereto will not be reversed in this Court.

The view we have thus taken of the conclusiveness of the findings and failure to find by the court below is sustained by the holdings of this court upon the facts reported in *Roth* v. *Allen, Bank* v. *Adams,* and *Gould* v. *Stevens,* before cited. In *Roth* v. *Allen,* it is said that the question, whether the holder of current negotiable paper has taken it with or without notice of defences between prior parties, whether he has exercised good faith in the transaction, or has been guilty of negligence or want of proper caution, are always questions of fact to be submitted to and determined by the jury. All the circumstances attending the transaction, the condition of the several parties, and all other facts that bear upon such an issue, are only evidence for the jury to weigh in deciding it.

In *Bank* v. *Adams,* this Court in holding that the plaintiff's motion for a verdict was properly denied quoted with approval the rule given in *Roth* v. *Allen.*

The plaintiff insists that it is entitled to a judgment on the facts found and relies upon the case of *Bank* v. *Goss,* 31 Vt. 315, and *Bromley* v. *Hawley,* 60 Vt. 46, 12 Atl. 220. But the facts as reported in those cases are unlike those in the case at bar. In *Bank* v. *Goss,* the defendant Goss procured the defendant Page to sign the note in suit for the purpose of enabling Goss to obtain a loan at the bank in the usual course of business. At the time the note was signed it was agreed by Goss that he would not use it, unless he could also procure the signature of one Brown upon it. Goss in violation of this agreement procured the plaintiff to discount the note, without the signature of Brown. Neither the bank nor any of its officers had any knowledge or notice of the alleged agreement.

In *Bromley* v. *Hawley*, the trial court rendered judgment for the plaintiff, and this Court said that the fact that the note was overdue; that it amounted to four thousand dollars; that it had different numbers on it,—one placed there by the maker and the other by the bank,—were not sufficient to put the plaintiff upon inquiry; it appearing that he took the note in good faith; and that the party with whom he negotiated was a man of extensive business, and his character and financial standing high, and in so doing quoted with approval the rule, herein referred to, respecting the duty of the purchaser of negotiable paper.

In the case at bar, the plaintiff in negotiating for the check was dealing with a party known to it to be irresponsible and a forger. Harkness had only four days before perpetrated a fraud upon the plaintiff by procuring it to discount, as genuine, a note for three hundred dollars on which he had forged the name of the surety, and the approval of the plaintiff's president. Also the plaintiff, in negotiating for the check, was dealing with a party who had before defrauded the plaintiff by procuring it to discount, as genuine, a note for seventeen hundred dollars to which the party had forged the name of a surety appearing thereon, and it is found that, at the time of the transfer of the check, the plaintiff's president had reason to suspect that the name of the surety on this note was forged.

In view of these and other facts and circumstances appearing from the findings, a court might well consider that the plaintiff's officers knew of the fraudulent and dishonest methods resorted to by Harkness to obtain money and credit; that they had reason to suspect that the check was obtained from the defendant by the same methods, and hesitate to find that the plaintiff had no reason to suspect that Harkness had pro-

cured the check from the defendant by fraud.   In these circumstances it cannot be said that the equities are with the plaintiff, or that it is entitled to recover the amount of the check notwithstanding the failure of the court to find that it had no reason to suspect, when it took the check, that the same was invalid as between the original parties thereto.

The case of *Ormsbee* v. *Howe,* 54 Vt. 182, was for. the benefit of one Healey, who purchased the note before due of one Preston, the payee.   The note was given in settlement of a fraudulent debt and was wholly without consideration. The case was tried by the court, and it found that Healey had such knowledge in regard to the way in which orders and notes for wire were obtained by Preston that he might reasonably expect that the note in suit was obtained in the same manner.   Notwithstanding this finding, the trial court rendered judgment for the plaintiff to recover on the note, but this Court on the finding reversed the judgment and rendered judgment for the defendant to recover his costs.

*Judgment affirmed.*