BANKERS' MUT. CASUALTY CO. v. STATE BANK OF GOFFS.

(Circuit Court of Appeals, Eighth Circuit.   October 6, 1906.)

No. 2,331.

1. APPEAL—REVIEW—DIRECTED VERDICT—MOTION BY BOTH PARTIES.

Where both parties moved for a directed verdict, the finding cannot be disturbed, if there is any substantial evidence to support the several issues on which it depended.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 4024.]

2. INSURANCE—BURGLAR INSURANCE—DAMAGED SAFE—RIGHT TO REPLACE.

Insurer agreed to indemnify a bank against loss of money stolen from its safe, damage done to the safe, damage done to the premises, and for loss of money violently taken from the bank in the daytime, in the aggregate sum of $3,000.  The policy reserved the right to the insurance company to repair any damage to property or to replace any damaged article with one of like quality and value, "instead of paying for the same in money."  The bank safe was blown open by burglars and money taken from the safe largely exceeding in value the sum of $3,000.  *Held* that, the bank having made no claim for damages to the safe, but only for the loss of the money stolen therefrom, the insurer was not entitled to replace the damaged safe as part payment of its liability.

3. SAME—REPRESENTATIONS—THICKNESS OF SAFE.

In an action on a burglar's insurance policy, evidence *held* insufficient to show the falsity of a representation that the door of insured's safe was five inches thick.

In Error to the Circuit Court of the United States for the Southern District of Iowa.

This was an action on a policy insuring the defendant in error, who was plaintiff below, in the sum of $3,000 against (1) "all loss of money, bullion, and securities in consequence of the felonious abstraction of the same by burglars from the safe or safes" contained in plaintiff's vault; (2) "for direct loss by damage caused to such safe or safes, or to the vault containing such safe or safes, or to the premises by such burglarious entry."  The policy, as usual, required as a condition precedent to liability on the part of the insurance company that, in case of loss or damage arising under it, immediate notice and subsequent detailed proof of loss and damage claimed by the assured should be furnished.  While the policy was in full force and effect, the safe was burglarized by the use of explosives, the safe destroyed, and $5,292.65 in money taken.  The bank subsequently gave the notice required and made proof of loss, claiming no indemnity for injury to the safe, but the full amount of $3,000 on account of the money taken from the safe.  Upon a refusal by the company to pay it, this suit was instituted to recover the same.  The policy contained, among other things, the following stipulations, which form a part of the contract:  (1) "In case of loss under this policy the company shall be subrogated to all claims or rights of the assured in respect of such loss against any third party or parties to the extent of the company's loss, and the assured shall execute any and all papers required to secure to the company such claims or rights."  (2) "The company may repair any damage to property, and it may replace any damaged article with one of like quality and value, instead of paying for same in money.  Any new article so furnished to be the property of the assured.  Any damaged article so replaced shall belong to the company."  (3) "In consideration of  *  *  *  and of the statements contained in the schedule attached hereto and hereby made a part hereof, which statements the assured  *  *  *  warrants to be true, the Bankers' Mutual Company does hereby agree," etc.

The defenses made to the action are substantially as follows:  First, that the bank had made a settlement with the manufacturer of the safe and re-

leased it from the demand for damages which had accrued to the bank by reason of a guaranty given it at the time of the purchase of the safe, and had refused to execute papers necessary to enable the insurance company to be subrogated to the right to assert such demand; second, that the bank had refused to permit the insurance company to pay the loss by replacing the damaged safe and paying in money only the difference between the original cost of the safe and the amount of the loss; third, that there had been a breach of warranty, in that, while the safe door was represented in the application for the insurance to be five inches thick, it was in fact less than five inches thick. On these issues the case went to trial to a jury, and at the close of the evidence each party moved the court for an instructed verdict in its favor—the plaintiff, for a verdict in the full amount of the policy, $3,000 and interest; the defendant, for a verdict that plaintiff could not recover at all. The trial court gave the instruction in favor of the plaintiff, and the defendant brings the case here by writ of error to secure a reversal.

Jeremiah B. Sullivan (John B. Sullivan and George W. Bowen, on the brief), for plaintiff in error.

Nathaniel T. Guernsey, for defendant in error.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Each party having moved for a directed verdict, the finding cannot be disturbed, if there was any substantial evidence to support the several issues on which it depended. Beuttell v. Magone, 157 U. S. 154, 157, 15 Sup. Ct. 566, 39 L. Ed. 654; Phenix Ins. Co. v. Kerr, 64 C. C. A. 251. 129 Fed. 723, 724, 66 L. R. A. 569. Applying that well-settled rule to this case, we have no hesitation in holding that there was ample evidence to support the finding below that no settlement had ever been made by the bank with the original manufacturer of the safe of any claim it had on the guaranty of soundness of the safe. In fact, the evidence is quite conclusive that no such settlement was ever made. In like manner it may be said there was abundant evidence that the bank offered the insurer a sufficient assignment of all its rights against the manufacturer to enable it to assert any claim it was entitled to under the policy; so that, even if the offer of such an assignment was a condition precedent to the maintenance of a suit on the policy, which we do not decide, it does not appear that the condition had been violated.

Did the insurer have the right to replace the damaged safe as part payment of its liability? We think not. It agreed to indemnify the bank against several different possible losses specified in the policy—against loss of money stolen from the safe, damage done to safe, damage done to the premises, and loss of money violently taken from the bank in the daytime, in the aggregate sum of $3,000. There was no apportioning of the indemnity between the several losses insured against. The bank, by reason of the fact that the money taken from the safe largely exceeded the aggregate of the promised indemnity made a claim against the insurer for that loss only. It made no proof of loss on account of damage to the safe or of damage to the premises. It sued for no such damages, but confined its claim to the loss of money stolen from the safe. The right reserved to the insurance company by the policy is to replace any damaged article "instead of paying for

same in money." This involves a clear implication that the right to replace was alternative in its character—was an option which the company might or might not exercise. One of two obligations was imposed upon it—either to pay for the damage to the safe or to replace it with a new one. If the obligation to pay did not exist, the alternative right or option could not exist. As no liability was asserted against the insurer for damages to the safe, and as, by reason of the fact that no proof of loss was made for such damage, no liability could or did exist for the same, it is impossible under any fair interpretation of the policy to assert a right to replace the damaged safe as part payment for the loss of the money which the bank sustained.

Defendant contends that the contract is indivisible, and that, if any loss occurred in respect of any one of the four subjects of insurance, the right to replace any one as a partial payment of the indemnity, whether any claim was made for its loss or not, arose. This seems to us to be an unwarrantable construction of the contract; and to require the total elimination of one of its important clauses. This construction might be correct if the language used was only that "the company may repair any damage to property, and it may replace any damaged article with one of like quality and value," and take credit for the same; but this quoted language is not all. It is supplemented by the words "instead of paying for same in money." These supplemental words, on defendant's theory, have no meaning, and the canon of construction requiring consideration to be given to every part and portion of a contract is ignored if defendant's theory is correct. It would have been an easy matter for the company, following the practice generally prevailing in issuing fire insurance policies, to apportion the agreed indemnity to the several subjects of loss. This it did not do, but left its policy, let it be conceded for the present purpose only, fairly susceptible to the two different interpretations placed upon it by the respective parties. In such circumstances the rule is that the interpretation most favorable to the assured will be adopted. Mr. Justice Harlan, in Thompson v. Phenix Ins. Co., 136 U. S. 287, 297, 10 Sup. Ct. 1019, 34 L. Ed. 408, says:

"If a policy is so drawn as to require interpretation, and to be fairly susceptible of two different constructions, the one will be adopted that is most favorable to the insured. This rule, recognized in all the authorities, is a just one, because those instruments are drawn by the company."

In any view we take of the question now being considered, the company had no right to tender a new safe in place of the old one as partial payment of its agreed indemnity of $3,000.

Was there a breach of the warranty that the door of the safe was 5 inches thick? The safe in question was generally known as a "screw door safe," kept inside the vault for the safe-keeping of moneys and securities of the bank. Its inside measurements were about 16 inches in height, 16 inches in width, and 12 inches in depth. It had a small round door opening into it on one side. This door, which was blown open by the explosion, was composed chiefly of a series of steel plates screwed together, aggregating in thickness 4 inches of solid metal. On the inside of this circular, solid, metallic foundation, and extending from its edge well towards the center, was screwed a rim or ring of

solid steel an inch thick, called the "screw ring," having on its edge threads adapted to engage with the counterpart of the screw on the body of the safe for the purpose of locking it. This circular rim became incorporated with the door as an integral part of it, and so covered the inside of it as to make a large part of the superficial area of the door 5 inches in thickness. In the space between the surrounding rim and the center of the door was located the operating device of the lock, and this was covered over with a thin plate of steel. As a result of this arrangement of the lock and locking device, a large part of the door was in fact 5 inches thick, and the balance might, to a person not skilled in the art of making safes, reasonably appear to be so. Mr. Mosler, the vice president of the Mosler Safe Company, large manufacturers of safes, was called as a witness to explain, among other things the construction of the door of the safe. He testified on cross-examination as follows:

"There are parts of the doors thicker than other parts. The screw on the interior of the safe, which engages with a screw on the body of the safe, projects from the body of the door. The thickness of the door, including the screw, is about 5 inches. * * * This extra inch of thickness is made up of the screw ring on the door. The screw ring is located on the back of the door, partly surrounds the inside plates, and the balance of it is exposed and the space left for operating the time lock. The whole of the ring is on the inside of the door, and the part exposed is between that and the center. The thickness of the plate from the inner to the outer surface is 4 inches. Including the screw, the thickness is from 5 to 5½ inches. * * * A safe expert would measure the thickness of the door from the inside of the rings; in other words, showing 4-inch door. One not an expert might be misled, and figure the thickness of the door including the rings. The width would then be from 5 to 5½ inches, and it depends entirely on how it is measured."

From this and other like evidence it appears that there was substantial evidence tending to show that an unexpert person, one not familiar with the construction of safes or the terminology of the art, might properly enough say the door of the safe was 5 inches thick. In giving such answer he would speak truly. It was in fact 5 inches thick. It was of solid metal of that thickness throughout much of its dimensions, and throughout the balance it was 5 inches thick of solid metal locking device and cover over the same. Strictly and literally speaking, therefore, the warranty was not breached. At any rate there was sufficient substantial evidence to sustain the finding of fact in favor of the plaintiff on that issue within the true meaning and spirit of the contract.

Some other questions are presented by the numerous assignments of error of which we find no occasion for specific consideration. The conclusions already reached and stated necessarily result in an affirmance of the judgment of the Circuit Court, and an order will be made to that effect.