PENSACOLA STATE BANK v. MELTON et al.

(District Court, W. D. Kentucky, at Owensboro. December 19, 1913.)

1. ALTERATION OF INSTRUMENTS (§ 6*)—NOTES—DATE OF MATURITY—MATERIAL ALTERATION.

Under Kentucky Negotiable Instruments Law (Ky. St. § 3720b) § 125, providing that any alteration which changes the time of payment is a material alteration, an instruction that a change of the date of maturity of the note sued on from May 15, 1907, to May 15, 1908, without the authorization or consent of defendants, was a material alteration which released them from liability was proper.

[Ed. Note.—For other cases, see Alteration of Instruments, Cent. Dig. §§ 30–33; Dec. Dig. § 6.*]

2. NEW TRIAL (§ 41*)—PREJUDICE—INSTRUCTIONS.

Where a material alteration was pleaded as a defense to a note, plaintiff was not prejudiced by an instruction submitting to the jury whether the alteration was made before or after maturity, limiting the availability of the defense to a finding that it was made after maturity.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 67–71; Dec. Dig. § 41.*]

3. BILLS AND NOTES (§ 348*) — TRANSFER — "HOLDER IN DUE COURSE" — INDORSEE AFTER MATURITY.

Kentucky Negotiable Instruments Law (Ky. St. § 3720b) § 52, provides that a "holder in due course" is one who takes an instrument complete and regular on its face; becomes a holder before it is overdue, and without notice that it has previously been dishonored, if such is the fact; takes it in good faith and for value, and at the time it is negotiated to him has' no notice of any infirmity therein, or defect in the title of the person negotiating it. *Held,* that where a note sued on when transferred to plaintiff showed on its face that the date of maturity had been altered from May 15, 1907, to May 15, 1908, and the transfer was made November 2, 1907, plaintiff was charged with notice by the instrument itself that it was overdue, and it was not a holder in due course, and hence the note was subject in its hands to the defense that it was given without consideration.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 870–877½; Dec. Dig. § 348.*

For other definitions, see Words and Phrases, vol. 4, p. 3380.]

4. BILLS AND NOTES (§ 497*)—INDORSEMENT AFTER MATURITY—INQUIRY—BURDEN OF PROOF.

Where plaintiff took a note by indorsement after maturity and made inquiry concerning the existence of defenses, the burden was on it to allege and prove it.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1448, 1675–1681, 1683–1687; Dec. Dig. § 497.*]

5. BILLS AND NOTES (§ 538*)—INDORSEE—DEFENSES—WANT OF CONSIDERATION.

Where plaintiff was not a holder in due course of the note sued on, which it acquired after maturity, with notice that the date thereof had been altered without defendants' consent, an instruction that, though it was presumed that the note was given for a consideration, such presumption might be overcome by testimony was expressly authorized by Kentucky Negotiable Instruments Law (Ky. St. § 3720b) § 28, giving a right to defend on that ground.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1895–1898, 1900–1910; Dec. Dig. § 538.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

6. BILLS AND NOTES (§ 351*)—INDORSEMENT—NEGOTIABLE INSTRUMENTS LAW —CONSTRUCTION.

Kentucky Negotiable Instruments Law (Ky. St. § 3720b) § 124, provides that, when a negotiable instrument is altered without the consent of all the parties liable thereon, it is avoided except as against the party who has made, authorized, or assented to the alteration, and subsequent indorsers, or when an instrument has been materially altered, and is in the hands of a holder in due course not a party to the alteration, he may enforce payment thereof according to its original tenor. *Held*, that the last clause of such section did not apply to a case where the note had been materially altered after it was overdue, though it was thereafter indorsed and delivered to plaintiff, which was not a party to the alteration.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 878–881, 882½–885; Dec. Dig. § 351.*]

7. BILLS AND NOTES (§ 538*)—TRANSFER—ACTION BY INDORSEE—INSTRUCTIONS.

Ky. St. § 474 provides that all bonds, bills, or notes for money shall be assignable so as to vest the right of action in the assignee, but, except in cases of bills of exchange, shall not impair the right to any defense, discount, or set-off that defendant might have used against the original obligee, or any immediate assignor before notice of the assignment. Florida Gen. St. 1906, § 1465, provides that the assignment or indorsement of a note shall vest in the indorsee the same rights, powers, and capacities as might have been possessed by the assignor or indorser; that he may bring suit thereon, and that it shall not be necessary for plaintiff to allege the consideration on which the note was given, or to prove such consideration, or the execution of the instrument, unless it shall be impeached by defendant under oath. *Held*, that in a suit in the federal court sitting in Kentucky, on a note transferred to plaintiff in Florida, after maturity, an instruction that the indorsement and delivery of the note to plaintiff passed the legal title, and authorized plaintiff to sue thereon in his own name, was proper.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1895–1898, 1900–1910; Dec. Dig. § 538.*]

8. JUDGMENT (§ 617*)—DEFENSES CONCLUDED—ACTION ON NOTE.

Where a note sued on was transferred to plaintiff after maturity, a decree in an equity suit confirming plaintiff's title to the note did not affect the right of defendant to take advantage of any defense thereto which would have been available as against the payee.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1062, 1130, 1134; Dec. Dig. § 617.*]

9. NEW TRIAL (§ 35*)—GROUNDS—RULINGS ON EVIDENCE.

Alleged error in the admission of testimony on an issue presented by defendants, which the court charged was not maintainable, is not available to plaintiff as a ground for new trial.

[Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 51–55; Dec. Dig. § 35.*]

10. STIPULATIONS (§ 14*)—CONSTRUCTION—WITNESSES.

Where a written stipulation provided that it should be read as testimony, subject to exceptions for incompetency and irrelevancy only, it constituted an express waiver by plaintiff of all objections to the competency, as witnesses, of the parties to the transaction, leaving for determination only whether the testimony was competent or relevant.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 24–37; Dec. Dig. § 14.*]

11. WITNESSES (§ 159*)—COMPETENCY—TRANSACTION WITH INSANE PERSON.

Where, in an action on a note, the date of maturity of which had been altered, there was no direct proof that S. made the alteration, nor, if he did so, that the alteration was a transaction between him and any one of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

defendants, or that he made any statement to them concerning it, testimony of defendants that they did not authorize or consent to the alteration was not objectionable as a statement of, or relating to, a transaction with S., who was insane, within Ky. Civ. Code Prac. § 606, providing that parties to a suit may testify except as to any verbal transaction with, or statement of, any person who is of unsound mind, and was therefore admissible on the issue of material alteration.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 629, 664, 666–669, 671–682; Dec. Dig. § 159.*]

Action by the Pensacola State Bank against R. E. Melton and others. On motion for new trial. Denied.

John B. Baskin, of Louisville, Ky., for plaintiff.

W. T. Ellis, and Jas. J. Sweeney, both of Owensboro, Ky., for defendants.

EVANS, District Judge. The plaintiff against which the verdict of the jury went has moved for a new trial, and has specified nine grounds upon which it seeks that relief. The ninth of these grounds is subdivided into eight other grounds. Laying aside for the present the first eight of the grounds urged, and which relate to questions of testimony, we will first dispose of the ninth ground and its subdivisions, all of which relate to the charge to the jury.

[1] 1. The plaintiff in its petition shows, and the fact is nowhere disputed, that the makers of the note sued on, on its face, made it payable on May 15, 1907. The plaintiff also shows, and it is also undisputed, that the figures "1907" were changed to "1908," and avers that this was done *"without the knowledge or consent of plaintiff or defendants."* Besides, there was no testimony to show that either of the defendants authorized or consented to the alteration, and in fact they testified that they had done nothing of the kind, and had no knowledge of the alteration until the note was sued on. This being the situation, the court charged the jury that if the alteration was made after May 15, 1907, without the authorization or consent of the defendants, the alteration was a material one and discharged the six defendants from liability thereon. The jury returned a verdict as follows: "We, the jury, after deciding that this note was changed after May 15, 1907, find for the defendant. T. W. Anderson, Foreman."

It is objected that the charge in respect to this matter was erroneous, but it would seem to be obviously correct. Section 125 of the Negotiable Instruments Act (section 3720b, Ky. St.) provides that:

"Any alteration which changes * * * (3) the time * * * of payment * * * is a material alteration."

This, like most of the provisions of the act, is but a declaration of the common law, and abundantly supports the charge. Besides many Kentucky cases which support this elementary proposition, we may quote from what the Supreme Court said in Mersman v. Werges, 112 U. S., at page 141, 5 Sup. Ct. 65, 28 L. Ed. 641, as follows:

"A material alteration of a written contract by a party to it discharges a party who does not authorize or consent to the alteration, because it destroys the identity of the contract, and substitutes a different agreement for that

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

into which he entered. In the application of this rule, it is not only well settled that a material alteration of a promissory note by the payee or holder discharges the maker, even as against a subsequent innocent indorsee for value; but it has been adjudged by this court that a material alteration of a note, before its delivery to the payee, by one of two joint makers, without the consent of the other, makes it void as to him."

[2] 2. Objection is also made that the court left it to the jury to say whether the alteration was made before, or was made after, May 15, 1907, but if there was any question in the case, that was it. While we doubted whether the alteration of the date of payment was not a material one, even if made *before* maturity, we gave plaintiff the benefit of the doubt, and held the defense of material alteration good only in the event it was made *after* the note was overdue, viz., after May 15, 1907, and so charged the jury. We can see no error in this, as the charge left it to the jury to find for the plaintiff if the alteration was made before the maturity of the note, but for defendants if made afterwards.

[3] 3. We are quite sure that what we have said makes it clear that the defendants were entitled to a verdict upon the sole ground of material alteration, if that was made after May 15, 1907. But there was also a defense that there was no consideration for the note. Considerations very similar to those respecting the material alteration apply to this defense also. That is to say, if the note was indorsed and delivered to the plaintiff after May 15, 1907, when it became due, then the indorsee acquired no rights superior to those of Scudamore, and if the want of consideration could have been pleaded as against him, so it can be pleaded against a holder who did not get the note in "due course." In such circumstances the new holder acquired no right superior to Scudamore's.

Section 52 of the Negotiable Instruments Act provides that:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"First. That the instrument is complete and regular on its face.

"Second. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.

"Third. That he took it in good faith and for value.

"Fourth. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Here it is quite apparent that when plaintiff took the note it was neither complete nor regular on its face, because the alteration plainly appeared thereon. It is certain that when plaintiff took the note it was long "overdue," and it is equally clear that plaintiff had notice of the alteration. It could be seen, and as that was a fact which should have put the plaintiff upon inquiry, it was equivalent to notice of whatever fact the inquiry would have developed. It is obvious that if plaintiff had inquired of the makers before taking the note, the fact of alteration would have been made clear. So we conclude that the plaintiff did not become a holder "in due course" when it took the note by indorsement from Scudamore, the payee, on November 2, 1907. The following illustrative cases may be noted: Wilkins v. Usher, 123 Ky. 696, 97 S. W. 37; First National Bank v. Shue, 119 Mich. 560, 78 N.

W. 647; Pierson v. Huntington, 82 Vt. 482, 74 Atl. 88, 29 L. R. A. (N. S.) 695, 137 Am. St. Rep. 1029; Limerick National Bank v. Adams, 70 Vt. 132, 40 Atl. 166. Under these circumstances the court told the jury that plaintiff was put upon inquiry, and in this we think we were amply supported by what the Supreme Court said in United States v. Linn, 1 How. 104, 11 L. Ed. 64, and in Smith v. United States, 2 Wall. 232, 17 L. Ed. 788.

[4] If the plaintiff made inquiry, as this rule requires, it was its duty to allege and prove it. It did not devolve on the defendants to show that plaintiff did not do what the rule exacted of it.

[5] 4. In its charge to the jury the court told them that the note on its face stated that it was given for value received, and that presumptively this was true, though it was a presumption that might be overcome by testimony. The plaintiff insists that this last proposition is not correct. There has always been room for a plea of no consideration when suit was brought upon a note which, per se, carried a presumption that it was based upon a valid consideration, and section 28 of the Negotiable Instruments Act expressly gives the right to defend on that ground. It is too clear to require citation of authority that the charge was perfectly correct in this connection, qualified as it was with the condition that the alteration of the note must first be found to have been made after it became due on May 15, 1907. The jury found the essential fact, and it followed that the plaintiff which took the note on November 2, 1907, took it after the alteration and after it was past due. Plaintiff, therefore, held it subject to the defense of no consideration precisely as Scudamore would have held it if no transfer had been made by him. We are not quite sure what plaintiff's counsel means when stating that there is no evidence in the record of want of consideration. The uncontradicted testimony of each of the defendants in the clearest manner shows that there was no consideration for the note.

[6] 5. As we have seen, the plaintiff alleged in its petition that the note was altered from "1907" to "1908" "without the knowledge or consent of plaintiff or defendants." While the absence of knowledge or consent on plaintiff's part was probably alleged to meet the terms of section 124 of the Negotiable Instruments Act, the court charged the jury that it was immaterial whether the alteration was made without plaintiff's knowledge or consent if it was made after May 15, 1907. Section 124 is in this language:

"Where a negotiable instrument is materially altered without the assent of all the parties liable thereon, it is avoided, except as against a party who has himself made, authorized or assented to the alteration and subsequent indorsers. But when an instrument has been materially altered and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor."

We have seen how section 53 has defined the phrase "holder in due course," and we cannot doubt that the last clause of section 124 does not embrace a case where the note has been materially altered after it was overdue, even though it has thereafter been indorsed and delivered to another holder without his having been a "party to the alteration." That clause of the section must necessarily be restricted to notes

the integrity of which has not been interfered with by unauthorized and material alterations made after maturity. This view is particularly applicable where, as here, the note when indorsed to plaintiff on its face plainly showed the change. We think it is wholly inadmissible to construe section 124 as putting such a note upon a footing as favorable as that of one which had not been tampered with. It would not do, we think, to hold that the payee of a note may, after its maturity, alter it as he might please, and by thereafter indorsing it bind the makers on a new writing, of which they had never heard and to which they had never assented, precisely as if they had actually made the new contract. Especially must this view be emphasized when the indorsee ignores the alteration made manifest on the face of the paper he receives. The makers have rights which cannot be defeated by having a new contract made for them without their consent or knowledge. The last clause of section 124 goes to the verge of legislative power in enforcing a new contract where the alteration was made before maturity, but except within the precise language of that clause a material alteration discharges the makers of a note. Here it follows that the indorsee cannot have the same rights as would one who received the note in due course before maturity.

[7] 6. The plaintiff also contends that the court erred in telling the jury that the indorsement and delivery of the note to the plaintiff in Florida passed the legal title to it, and authorized it to sue thereon in its own name. How this charge can in any way prejudice the plaintiff we have not been informed, and cannot conceive, especially as section 51 of the Negotiable Instruments Act gives plaintiff the right to sue in its own name.

The plaintiff alleges title in the note, and no one disputes it. It has sued thereon in its own name, and nobody has objected. What more it wants in this connection is not clear. The note was executed and delivered to Scudamore in Kentucky, the forum of this suit. Even though he passed it to the plaintiff as collateral security, the legal title passed by the indorsement and delivery to plaintiff. Section 474, Kentucky Statutes, is as follows:

"All bonds, bills, or notes for money or property shall be assignable so as to vest the right of action in the assignee; but except in cases of bills of exchange, not to impair the right to any defense, discount or off set that the defendant has or might have used against the original obligee, or any intermediate assignor, before notice of assignment."

The assignee becomes the absolute owner, subject to defenses. This statute was construed in Prather v. Weissiger, 10 Bush, 117, and in Garrott v. Jaffray, 10 Bush, 413. See, also, Levy v. Rudolph, 56 S. W. 988, 22 Ky. Law Rep. 258, 260, where the note was taken as collateral only. We think it probable that as the note sued on here was dishonored and overdue, and especially as it had been discharged by a material alteration when taken by plaintiff, it was no longer a "negotiable instrument," even under section 47 of the act, but was subject to the statute just copied and the decisions to which we have just referred.

Besides, the indorsement and delivery to plaintiff were made in

Florida. The law of the place of that contract is found in section 1465, Florida General Statutes (Ed. 1906), which is as follows:

"All bonds, notes, covenants, deeds, bills of exchange, and other instruments of writing not under seal, shall have the same force and effect (so far as the rules of pleading and evidence are concerned) as bonds and instruments under seal.

"The assignment or indorsement of any such instruments of writing shall vest the assignee or indorsee with the same rights, powers and capacities as might have been possessed by the assignor or indorser. And he may bring suit thereon, and it shall not be necessary for the plaintiff in any suit upon an instrument assignable by law to set forth in the declaration the consideration upon which the instrument was given, or upon which such assignment or indorsement was made, nor to prove such consideration or the execution of such instrument, unless the same shall be impeached by the defendant under oath. An executor or administrator, however, may deny the execution or consideration aforesaid by plea not under oath."

7. Though section 51 of the Negotiable Instruments Act expressly provides that the holder of a negotiable instrument may sue thereon in his own name, the plaintiff seems to prefer to claim title to the note and the right to sue thereon under a decree rendered by the United States Circuit Court for the Eastern District of Illinois in a cause in equity therein pending, wherein the plaintiff in this action was complainant and G. C. Scudamore and the defendants in this action were defendants. A complete transcript of the record in that suit, and which we shall call the Illinois case, was made part of the record in this suit by an amended petition filed herein on the 28th day of April, 1913. It is not impossible that more importance has been given the Illinois case than it deserved. It seems to us that we gave it its full effect on this case when, in the charge, we assumed that the decree therein confirmed the plaintiff's title to the note sued on, but that it could not in any way be held to deprive the defendants of the right to plead herein the defenses set up in their answers. The accuracy of this conclusion seems to admit of no discussion, but it may be well to state our idea somewhat more fully.

The Illinois suit was brought under section 8 of the Judiciary Act of March 3, 1875, c. 137, 18 Stat. 472, compiled as section 629 of the Revised Statutes (U. S. Comp. St. 1901, p. 513), and later made section 57 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1102 [U. S. Comp. St. Supp. 1911, p. 152]), though the latter was not in force when the Illinois suit was brought.

Section 8 is as follows:

"That when in any suit, commenced in any circuit court of the United States, to enforce any legal or equitable lien upon, or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of, or found within, the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer, or demur, by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be; or where such personal service upon such absent defendant or defendants is not practicable. such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks;

and in such case, such absent defendant shall not appear, plead, answer, or demur within the time so limited, or within some further time, to be allowed by the court, in its discretion, and upon proof of the service or publication of said order, and of the performance of the directions contained in 'the same, it shall be lawful for the court to entertain jurisdiction, and proceed to the hearing and adjudication of such suit in the same manner as if such absent defendant had been served with process within the said district; but said adjudication shall, as regards said absent defendant or defendants without appearance, affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein; within such district, and when a part of the said real or personal property against which such proceeding shall be taken shall be within another district, but within the same state, said suit may be brought in either district in said state: Provided, however, that any defendant or defendants not actually personally. notified as above provided may, at any time within one year after final judgment in any suit mentioned in this section, enter his appearance in said suit in said circuit court, and thereupon the said court shall make an order setting aside the judgment therein and permitting said defendant or defendants to plead therein on payment by him or them of such costs as the court shall deem just; and thereupon said suit shall be proceeded with to final judgment according to law."

The equity suit under the statute was necessarily a very special proceeding. The defendants lived elsewhere, and were to be proceeded against by substituted or constructive service of process, and the jurisdiction of the court in such cases is very specifically limited, and cannot be maintained unless the statute is strictly complied with, nor unless the facts upon which jurisdiction is based are clearly shown. No presumptions favorable to jurisdiction are to be indulged. Ex parte Smith, 94 U. S. 455, 456, 24 L. Ed. 165. When we compare the averments of the bill with the provisions of the statute we find how far short of the latter the former come, and when we examine the testimony heard in the equity suit we see how this situation is emphasized. We need not go into the details, as we have already done so in an opinion delivered March 10, 1913, in which the matters pertaining to the Illinois suit were fully discussed. For present purposes we shall content ourselves with saying: First, that that bill does not' allege that the note was "within the district" where the suit was brought; second, that the testimony in that case unmistakably shows that the note was not then "within" that district, but was in the state of Florida, where it was then in the possession of plaintiff's predecessor, who alleges itself to be and was in fact the holder thereof; third, that its situs was therefore in Florida, and not in Illinois; and, fourth, that the note never was in the state of Illinois until it was voluntarily sent there as an exhibit in the deposition of one of the plaintiff's witnesses in the case long after the suit in equity was filed on January 4, 1911. The defendants were at most the mere makers of the note, although they claim to have a defense to it. They never claimed any interest in or title to the note, either equitably or otherwise, nor are they alleged in the bill to have done so. Nevertheless the court in which the equity suit was pending decreed, not only the relief prayed for in the bill, but greatly more.

[8] It is not necessary for us definitely to determine what, if any, effect the decree in the equity suit had on the rights of the plaintiff as between it and Scudamore, but we shall assume that its effect was to confirm plaintiff's *title* to the note as against any claim that Scudamore

had. But that result, while it possibly may make clearer plaintiff's right to sue in its own name, cannot affect nor interfere with the right of the defendants to make any available defense to the note. So that, as between the plaintiff and the defendants now before the court, the equity suit was altogether inefficacious and futile, except as it confirmed plaintiff's title as against Scudamore's.

[9] 8. This brings us to the consideration of the first ground urged for a new trial, which has relation to the testimony of J. B. Ramsey. It is rather remarkable that this ground, in the main, complains of the admission of testimony bearing upon the change of the *place of payment* of this note, as to which defense the court explicitly charged the jury that it was not maintainable. How the admission of such testimony prejudiced the plaintiff, naturally enough, is not explained. The defendants might have lost the verdict, in which event *their* bill of exceptions might have brought up the question. Other parts of the testimony of J. B. Ramsey related to the defenses of material alteration and want of consideration, and will be treated of further along in connection with the testimony of the defendants on those two subjects.

These remarks more or less apply to the second ground for a new trial, which covers the testimony of R. E. Melton, the third ground, which has reference to that of J. E. Thornberry, the fifth, which has reference to that of J. R. Ramsey, and the sixth, which has reference to that of E. J. Ramsey, the addition of whose name to the note we held did not invalidate it. As to the fourth ground, which relates to the testimony of H. C. McDaniel, and the seventh, which relates to that of C. H. Wettereau, there need be no further reference than to say that, whatever weight may have been attached to this part of the testimony, it was obviously competent and relevant to the issues involved, or, so far as not so, was perfectly harmless to plaintiff.

9. The eighth ground for a new trial has relation to the action of the court in passing on the tenth of plaintiff's exceptions to the agreed testimony. We need only repeat here what we said on the subject in the opinion handed down on the first instant as follows:

"The tenth of plaintiff's exceptions is involved and objectionable in form, but, these matters apart, we will dispose of this exception also. It has reference to certain parts of the contents of a stipulation in writing filed on October 27, 1913, which stipulation is to be read as testimony subject to exceptions thereto for 'incompetency and irrelevancy only.' No objection has been made, or could, under the stipulation, have been made to the competency as witnesses of J. B. Ramsey, R. E. Melton, J. E. Thornberry, T. J. Pike, J. R. Ramsey, or E. J. Ramsey, and exception No. 10 is expressly based upon and limited to the ground that the 'statements' of said persons as specifically set forth in the stipulation are 'incompetent and irrelevant.' We are of opinion that what we must call the subclauses of exception No. 10, to wit, subclauses 1 and 7 and those parts of subclauses 2 and 5 which refer to the blank originally left in the note sued on, those parts thereof which refer to the filling of that blank with Scudamore's name, and those parts thereof which refer to the change made in the note whereby the 'words 'First National Bank of Sebree' were substituted for the words 'Bank of Sebree,' related to matters which are 'incompetent and irrelevant,' and to the extent indicated plaintiff's exception No. 10 will be sustained. But exception No. 10, so far as it relates to other matters covered by and contained in said stipulation, is overruled.

210 F.—5

We think this disposition of the question was entirely proper.

[10] 10. The agreement of the parties just referred to was in writing, and we think must be lived up to. Accordingly nothing remains but to determine whether the testimony of the various parties to the note sued on is "incompetent and irrelevant" within the language of the agreement so far as it bears: First, upon the question of the material alteration of the note; and, second, upon the defense of no consideration for the note. Section 606 of the Kentucky Civil Code of Practice regulates the competency of witnesses. It authorizes parties to the suit to testify, but excepts from the general rule their testimony as to any verbal statement of or transaction with a person who is of unsound mind. We have reached the conclusion that the only fair interpretation of the agreement is that it is an express waiver by the plaintiff of all objection to the competency *as witnesses* of the parties to the transaction with Scudamore, thus leaving to be determined only the question of whether the testimony of the parties to the note is competent and relevant to either one of the defenses to which we have just referred.

[11] As to the defenses of material alteration of the note, it will be observed that the testimony does not have reference to a "statement of" or to a "transaction with" Scudamore. We regard it, therefore, as perfectly clear that the testimony of the defendants to the effect that they did not authorize or consent to a change of the date of maturity of the note was not a matter which related to a "statement of" or to a "transaction with" Scudamore, who is insane. There was indeed no direct proof that Scudamore himself altered the note, and certainly none that, if he did so, it was a transaction between him and any one of the defendants, or that he made any statement to them about it. So that we are perfectly clear that as to this part of the testimony it was competent and relevant upon the issue of material alteration. Besides it is important to remember in this connection that the plaintiff's petition alleges that this alteration was made without the consent or knowledge of any of the defendants. In the face of this allegation by the plaintiff, this phase of the matter becomes of little or no importance.

We think, furthermore, that the testimony of the defendants was competent to the effect that there was no consideration for the note, that being one of the issues made by the pleadings and their side of which was open to support by defendants' testimony. The agreement as to this issue was also an express·waiver by the plaintiff of all objection to the competency of the defendants *as witnesses* as distinguished from the competency and relevancy of their testimony. Carrying into effect the agreement that objection to this testimony should be for "*incompetency and irrelevancy only*," we entertain no doubt of the accuracy of our ruling that it was neither.

We have very carefully examined the questions involved on the motion for a new trial; and, having no doubt that the verdict of the jury was right, whether viewed from the standpoint of either one or both of ·the defenses, the motion should be and is overruled.