## CLAPPER et al. v. GAMBLE.

Circuit Court of Appeals, Eighth Circuit.
September 28, 1928.

No. 8084.

Harry J. Libby, of Shelbina, Mo. (James H. Whitecotton, of Moberly, Mo., and William W. Barnes, of Paris, Mo., on the brief), for plaintiffs in error.

Ezra T. Fuller, of Hannibal, Mo. (George A. Mahan and Dulany Mahan, both of Hannibal, Mo., and James P. Boyd, of Paris, Mo., on the brief), for defendant in error.

Before VAN VALKENBURGH and BOOTH, Circuit Judges, and POLLOCK, District Judge.

BOOTH, Circuit Judge. This is a writ of error to a judgment entered upon a directed verdict in favor of R. R. Karraker, as receiver of the Drovers' National Bank, who was plaintiff below, but has been succeeded by Joseph A. Gamble, defendant in error. The action was brought to recover on two promissory notes, claimed to be part of the assets of the insolvent bank.

The complaint was in two counts. The first count alleged that the Drovers' National Bank of East St. Louis, Ill., was organized under the laws of the United States, and that R. R. Karraker was the duly appointed and acting receiver of said bank; that the defendants were all citizens and residents of the state of Missouri; that the Old Bank of Stoutsville, Mo., was a banking corporation organized and existing under the laws of the state of Missouri; that on the 3d of May, 1924, and long prior thereto the Old Bank of Stoutsville was indebted to the Drovers' Bank in the sum of more than $10,-000; that in addition the Drovers' Bank held a note for $9,500 signed by James H. Dooley, dated December 20, 1923, due 180 days after date. The complaint further alleged:

"That on the 3d day of May, 1924, the defendants, J. P. Clapper, J. P. Sohlinger, Lambert Buckman, E. S. Kelly, John M. Dixon, and J. H. Dooley, together with R. E. Crump and A. C. Jordan executed and delivered to J. H. Dooley, a certain promissory note whereby for value received, said defendants and said R. H. Crump and A. C. Jordan, they or either of them, promised to pay to the order of said J. H. Dooley at the Old Bank of Stoutsville, one year after the date of said note, the sum of $5,000, together with interest thereon from the date thereof at the rate of 8 per cent. per annum, payable annually; * * * that thereafter, and prior to May 3, 1925, the said J. H. Dooley for value received, duly indorsed, transferred and delivered said note for $5,000 to the Drovers' National Bank of East St. Louis, Illinois, without recourse, it being then and there understood and agreed by and between the said J. H. Dooley and the Drovers' National Bank of East St. Louis, Illinois, that said note for $5,000, so executed on said 3d day of May, 1924, should stand and be held by said Drovers' National Bank of East St. Louis, Illinois, as collateral security to the obligations of the Old Bank of Stoutsville, Missouri, including overdrafts, rediscounts, bills payable and the note of J. H. Dooley for $9,500; that said note for $5.000 bore the following indorsement on the back thereof: 'Assigned to Drovers' National Bank of East St. Louis, Illinois, as collateral security to obligations of Old Bank of Stoutsville, Stoutsville, Missouri, including overdrafts, rediscounts, bills payable and note of J. H. Dooley, for $9,500 without recourse on me. [Signed] J. H. Dooley.' "

The complaint further alleged that said note was owned by the receiver; that it was due and unpaid, though demand had been made for payment; that the debts to which the note was collateral were also due and unpaid. The second count contained similar allegations based upon another note of the same amount, bearing the same date, executed by the same parties, due 14 months after date, and bearing a similar indorsement. Judgment was demanded against the defendants on both notes.

Though diverse citizenship was alleged in the complaint, apparently as a ground of jurisdiction, yet there exists grave doubt whether lack of jurisdiction on that ground was not disclosed on the face of the complaint by reason of the "assignee clause" contained in section 24 (1) Judicial Code (U. S. C. tit. 28, § 41 (1); 28 USCA § 41 (1). However, jurisdiction clearly exists under section 24 (16) Judicial Code (U. S. C. tit. 28, § 41 (16); 28 USCA § 41 (16), relating to certain suits involving national banks. In re Chetwood, 165 U. S. 443, 17 S. Ct. 385, 41 L. Ed. 782; Auten v. U. S. Nat. Bank, 174 U. S. 125, 19 S. Ct. 628, 43 L. Ed. 920; Armstrong v. Trautman (C. C.) 36 F. 275; Price v. Abbott (C. C.) 17 F. 506; McDonald v. Nebraska, 101 F. 171 (C. C. A. 8); Guarantee Co. of N. D. v. Hanway, 104 F. 369 (C. C. A. 8); McCartney v. Earle (C. C. A.)

115 F. 462; Studebaker Corp. v. First Nat. Bank (D. C.) 10 F.(2d) 590.

Copies of the notes sued upon were attached to the complaint. The first note read as follows:

"No. ———. $5,000. Stoutsville, Mo., "May 3, 1924.

"One year after date, we or either of us as principal, promise to pay to the order of J. H. Dooley, at the Old Bank of Stoutsville, Mo., five thousand and no/100 dollars for value received, with interest after date at the rate of 8% per annum which interest shall be due and payable annually and if the interest thereon be not paid annually or when due the same shall, when due, be added to and become a part of the principal, and bear interest at the same rate. The makers and indorsers hereof, waive demand, notice and protest.

"——— Postoffice.

"[Signed]

"J. P. Clapper.    Lambert Buckman.
"R. H. Crump.    E. S. Kelly.
"J. P. Sohlinger.    John M. Dixon.
"A. C. Jordan.    J. H. Dooley.
"Date ———.
"Extended to ———.
"Extended to ———.
"Extended to ———.
"Extended to ———."

And on the back thereof, appeared the following:

"Assigned to Drovers' National Bank East St. Louis, Illinois, as collateral security to obligations of Old Bank of Stoutsville, Stoutsville, Missouri, including overdrafts, rediscounts, bills payable, and note of J. H. Dooley for $9,500.

"Without recourse on me.

"[Signed]    J. H. Dooley."

Of the eight signers of the notes, six were made defendants in the action. All of these, except Dooley, made joint answer. They admitted the citizenship of the parties as alleged in the complaint, denied that they signed the note set out in the first count of the complaint, but admitted that they signed a paper reading as follows:

"No. ———. $5,000.00. Stoutsville, Mo., "May 3, 1924.

"One year after date, we or either of us as principal, promise to pay to the order of the Old Bank of Stoutsville, Mo., five thousand and no/100 dollars for value received, with interest after date at the rate of eight per cent. per annum, which interest shall be due and payable annually and if the interest be not paid annually or when due,

the same shall when due be added to and become a part of the principal and bear interest at the same rate. The makers and indorsers hereof waive demand, notice and protest."

They denied that the writing as signed had ever been delivered to the Old Bank of Stoutsville, alleged further "that said writing being so executed as aforesaid was afterwards, with the full knowledge and consent of the Drovers' National Bank aforesaid, materially altered and changed by erasing from said writing the words 'order of the' and adding before the words 'Old Bank of Stoutsville, Mo.,' the words 'order of J. H. Dooley at the,' thereby materially altering said note, [which] by said change being materially altered with the knowledge and consent of said Drovers' National Bank with such knowledge, [was] received by the said Drovers' Bank and placed among its assets." They alleged, further, that the alterations in said writing were made without their knowledge or consent. They denied that either they or the Old Bank of Stoutsville was indebted to the Drovers' National Bank.

Similar answer was made to the second count.

Defendant Dooley made separate answer. He admitted the citizenship of the parties as alleged in the complaint; admitted the indebtedness of the Old Bank of Stoutsville to the Drovers' National Bank as alleged in the complaint; also that the Drovers' Bank held a note signed by him for $9,500; but he alleged that this was made on behalf of the Old Bank of Stoutsville; that it received and retained the money thus obtained from the Drovers' National Bank. Defendant Dooley in his separate answer further alleged that the note set up in the first count of the complaint was signed by himself and the other defendants, and by Crump and Jordan, with the understanding that the note should be used by him as cashier of the bank or by the assistant cashier as accommodation paper to secure further loans or the existing indebtedness of the Old Bank of Stoutsville. The answer further alleged that he was duly authorized by the signers of said note to use the note as aforesaid, and further specifically averred that at the time the defendants signed said note it was not dated, nor was the time of payment inserted therein, but that the note was left in the hands of himself and said A. C. Jordan with the authority to fill in said blanks at any time it became necessary, for securing obligations for the Old Bank of Stoutsville, Mo., and to make such other alterations as was in his judgment necessary to ne-

gotiate the same, and that he prepared the said note in its present form, presented the same to plaintiff bank, and negotiated it in good faith as collateral security. Similar answer was made by Dooley to the second count.

The plaintiff, in his reply to the answer of the defendants, except Dooley, denied the allegations of the answer, and alleged affirmatively, in substance, what was alleged by Dooley in his answer. The defendants, other than Dooley, moved to strike out the reply of plaintiff. The motion was denied. They also demurred to the separate answer of Dooley. The demurrer was overruled.

The case went to trial before the court and a jury. At the close of all the evidence both sides moved for a directed verdict. By instruction of the court the jury returned a verdict for plaintiff in the full amount due on both notes with interest. Judgment was entered accordingly. Exceptions were duly taken by the defendants to the instructions for a verdict, to the verdict, and to the judgment entered.

Among the issues litigated were: Whether Dooley was authorized to make in the notes sued upon the additions and alterations which admittedly were made after the notes were signed, and to negotiate the notes; whether the Drovers' Bank became a holder in due course of the notes sued upon; whether the $9,500 note held by the Drovers' Bank evidenced a debt of Dooley or of the Old Bank of Stoutsville.

When at the close of all the evidence both parties moved for a directed verdict and made no reservation, the court was authorized to pass upon the issues of fact. The direction of a verdict by the court was a decision by it of all issues of fact involved which were necessary to support the verdict. Williams v. Vreeland, 250 U. S. 295, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038; Meyer, etc., Bank v. First National Bank, 291 F. 42 (C. C. A. 8); and cases cited; Speelman v. Iowa, etc., Ass'n, 4 F.(2d) 501 (C. C. A. 8); Linsky v. United States, 6 F.(2d) 869; Jackson v. Bell, 14 F.(2d) 61 (C. C. A. 8).

The only questions open in the appellate court to review the decision are: Was there any substantial evidence to support the findings? Was there error in the application of the law? See cases cited supra. Also Phenix Ins. Co. v. Kerr, 129 F. 723 (C. C. A. 8), 66 L. R. A. 569; Ins. Co. of N. A. v. Wis. Cent. Ry. Co. (C. C. A.) 134 F. 794; McCormick v. National City Bank of Waco (C. C. A.) 142 F. 132, 6 Ann. Cas. 544. We shall discuss briefly whether there was any substantial evidence to support findings favorable to plaintiff on the three issues mentioned which were covered by the verdict, and we shall take them up in reverse order.

1. As to the $9,500 note dated December 20, 1923, J. H. Dooley testified that it was a renewal of an original note given in 1920 or 1921; that the Old Bank of Stoutsville needed money and that he had given the note in his own name to secure the money and placed it in the bank for its use; that the bank received the benefit of it; that he had never used a penny of the money; that the reason why the bank had not made the note was that if the bank had borrowed the money in its own name it would have been borrowing beyond the limit allowed by law. This testimony was also corroborated. There was thus substantial evidence that the debt in reality was one of the Old Bank of Stoutsville.

2. Was there any substantial evidence that the Drovers' Bank was a holder in due course of the notes sued upon? The negotiable instrument law in force in Missouri provides as follows:

"*Holder in Due Course.*—A holder in due course is a holder who has taken the instrument under the following conditions: (1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Section 838, R. S. of Mo. 1919.

*What Constitutes Notice of Infirmity.*— To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." Section 842, R. S. of Mo. 1919.

As to the conditions in section 838, we think that the only one about which any question can arise in the case at bar, in view of the record, is the first, and the question is whether the record discloses any substantial evidence upon which the notes could properly be found complete and regular upon their face.

In their answer the defendants, other than Dooley, repudiated the notes as above set out, and although they alleged in their answer

that the notes were altered with the knowledge of the Drovers' Bank, and received by that bank with knowledge that they had been altered, there was no substantial evidence to sustain this contention. Moreover, the president of the Drovers' Bank testified that, at the time the notes were taken by his bank, he knew of no defects or infirmities in them. He further testified that it was not unusual, where printed forms of notes were used, to find the printed name of the payee stricken out and the name of a different payee written in. Without further reviewing or analyzing the evidence on this point, it is sufficient to state that we are of the opinion that there was substantial evidence to support the finding that the notes were complete and regular upon their face, and that the other requisites of a holder in due course were fulfilled.

■ 3. There remains the question whether there was any substantial evidence that J. H. Dooley was authorized to make the changes and alterations in the notes which he concededly did make after the notes were signed. If there is no substantial evidence to sustain a finding that Dooley was so authorized, then there can be no recovery on the notes, even though the Drovers' Bank was a holder in due course. Changing the name of the payee in a promissory note after execution, without the assent of the makers, is a material alteration, and avoids the note even in the hands of a holder in due course. Section 125, N. I. L. (Rev. St. Mo. 1919, § 911); Andrews v. Sibley, 220 Mass. 10, 107 N. E. 395; First Nat. Bank v. Gridley, 112 App. Div. 398, 98 N. Y. S. 445; Muse v. Clark, 112 S. C. 82, 98 S. E. 850; First Nat. Bank v. Fricke, 75 Mo. 178, 42 Am. Rep. 397 (decided prior to the N. I. L.); Mechanics' Am. Nat. Bank v. Helmbacher, 199 Mo. App. 173, 201 S. W. 383. See, also, Pensacola St. Bank v. Melton (D. C.) 210 F. 57; First Nat. Bank v. Barnum (D. C.) 160 F. 245. We turn, therefore, to examine whether there was any substantial evidence to sustain the finding of authority.

There was evidence tending to establish the following among other facts: J. H. Dooley was, and for upwards of 30 years had been, cashier of the Old Bank of Stoutsville. He and an assistant were the active managers of the bank. For some years prior to the date of the execution of the notes in suit, the Old Bank had been a customer and depositor of the Drovers' National Bank of East St. Louis, Ill. Dooley's son was president of the latter bank. At the time of the execution of the notes the Old Bank was indebted to the Drovers' Bank in an amount upwards of $20,000. Collateral, consisting of Liberty Bonds, amounting to about $15,000, had been placed with the Drovers' Bank; but the collateral had been reduced to about $1,000. In the spring of 1924, possibly two or three months prior to the execution of the notes in suit, Cashier Dooley and his assistant stated to the directors of the bank that it was likely to need money very shortly, and suggested the execution of notes by the directors, to be used, if needed. Similar practice had obtained before. Four notes, of $5,000 each, were accordingly signed and left with Dooley. The notes were not dated, and the date of maturity was left blank. Dooley testified that he was told that, if it became necessary to use the notes, he should 'complete them and use them to borrow money or as collateral, or use them the best he could for the benefit of the bank and the use of the bank.' Some weeks after the notes were executed, the Drovers' Bank demanded more collateral for the amount owing it by the Old Bank. Dooley thereupon took two of the four $5,000 notes, filled in the date and the date of maturity, changed the name of the payee from the Old Bank of Stoutsville to himself, and then indorsed them and delivered them to the Drovers' Bank as collateral. The other two $5,000 notes were used by Dooley later as collateral with the Hannibal Trust Company. When asked why he made the changes in the notes, Dooley testified as follows:

"They had told me to use these notes and to us them to the best of my knowledge and get the money, and that was the only way I knew how to fix them to negotiate them.

"Q. Why did you change them from being payable to the Old Bank of Stoutsville to have them payable to yourself? * * *.

"A. For the simple reason that was the proper way at that time to negotiate them, to fix the notes to negotiate them.

"Q. You thought it was the proper way?

"A. And the best way.

"Q. Why did you think it was the proper or best?

"A. That is the way I thought about it. I don't know why I thought so."

In May, 1924, a short time after two of the notes had been placed as collateral with the Drovers' Bank, that bank closed its doors. The present suit was not brought on the notes until November, 1926. During this period the makers of the notes knew that they had been negotiated.

■■ On this state of the evidence the trial court held that Dooley was authorized to make the changes in the notes and to negotiate them. While the evidence on this point, in our opinion, is not strong, yet we cannot

say that the finding is without any substantial evidence to support it; and accordingly it will not be disturbed. R. S. § 1011; 28 USCA § 879; U. S. F. & G. Co. v. Board of Commissioners, 145 F. 144, 150 (C. C. A. 8). See cases cited supra on similar point; also Beuttell v. Magone, 157 U. S. 154, 15 S. Ct. 566, 39 L. Ed. 654; United States v. Bishop, 125 F. 181 (C. C. A. 8); Mich. Home Col. Co. v. Tabor, 141 F. 332 (C. C. A. 8); Bankers' Mut. Casualty Co. v. State Bank, 150 F. 78 (C. C. A. 8); Roth v. Mut. Res. Life Ins. Co., 162 F. 282 (C. C. A. 8); Rainy Lake River Boom Corp. v. Rainy River Lumber Co., 162 F. 287 (C. C. A. 8). ▆ The remaining point relied upon is that the notes were improperly admitted in evidence. Whether, at the time they were first offered, sufficient foundation had been laid, we need not determine, but in view of later testimony, given relative to their execution and negotiation, we think they were clearly admissible.

Judgment affirmed.